**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Tyree BIRDSONG, Defendant-Appellant.**

**No. 30195.**

United States Court of Appeals,
Fifth Circuit.

July 16, 1971.

———◆———

H. L. Meredith, Jr., Greenville, Miss. (Court-appointed), for defendant-appellant.

H. M. Ray, U. S. Atty., William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before O'SULLIVAN,* THORNBERRY, and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

Tyree Birdsong was indicted on three counts of possessing an unregistered distillery in violation of 26 U.S.C.A. § 5601 (a) (1); carrying on the business of a distillery without having given bond in violation of 26 U.S.C. § 5601(a) (4), and possessing non-tax-paid whiskey in violation of 26 U.S.C. § 5604(a) (1). He was tried before a jury, and acquitted of the first two counts, but convicted of the third, possession of non-tax-paid whiskey. On this appeal, Birdsong attacks the trial court's denial of his motion to suppress certain evidence that he contends was seized in violation of his Fourth Amendment rights. As is frequently the case in these search and seizure controversies, the facts are all-important. We therefore recite in detail the circumstances and occurrences surrounding the arrest of Tyree Birdsong and the seizure of his whiskey.

Accepting as we must the credibility decisions and findings of fact of the court below, we have taken our statement of facts from the trial judge's findings announced at the conclusion of the hearing conducted on Birdsong's motion to suppress.

On July 30, 1969, two Federal agents and two State agents investigating an illegal whiskey operation went to a certain

---

* Senior Circuit Judge, 6th Circuit, sitting by designation.

house in Sunflower County, Mississippi. On that same day, Officer Krohn had been informed by a reliable person, an informer who had previously given good information to the officers, that Tyree Birdsong, the defendant, was operating a moonshine distillery in this house, which was described to the officers as a vacant house at the dead end of a farm road south of Sunflower County, Mississippi, near the Sunflower River.

The informer told Officer Krohn that Birdsong, the defendant, was operating a still there, and he was being assisted in the operation by another man. The defendant had been known by record and reputation to the Federal officers to be an illegal whiskey operator.

It was in pursuing that information that the officers rode together in a government vehicle down a dead-end road that led only to the house in question. When they stopped at the end of the dead-end road, it was at a point approximately four steps from the back corner of a farm tenant house. There were no signs of life at the house, but the officers immediately detected a strong odor of cooking mash emanating from the premises. They also noted a barrel on the outside containing spent mash.

Almost immediately upon their arrival at the scene and upon detecting the strong odor of cooking mash, two persons, Squire Harrington and his wife, L. B. Harrington, came out the rear door, and Officer Krohn identified himself as a Federal officer, and asked these persons, Harrington and his wife, how many barrels were in the house. The question was repeated when there was no immediate answer, and at that point, Harrington and his wife, after urging from the wife, told him that it was inside, pointing inside the house and that the still in the house belonged to Tyree Birdsong.

At this point, the officers inquired of Harrington and his wife whether anyone was inside the house to which they replied in the affirmative. Certain of the officers then entered the house immediately, and found therein an aged woman, Mrs. Coleman, and also the cooker located in the room which was then in operation with a burner going. Approximately two gallons of moonshine whiskey were observed in the catch pan under the still.

The officers had arrived at the farm property at approximately 11:30 A.M., and after coming out of the house, they had further conversation with Harrington and his wife. In particular, Officer Krohn asked L. B. Harrington about what kind of automobile Tyree Birdsong was operating, if any, and when he was expected to return, if at all. L. B. Harrington advised Krohn that Birdsong had been there that day and not long gone, that he was driving a large, brown, late model car of undesignated make, and that he was expected back at the tenant house before too long.

Thereupon, the officers arranged themselves to await the arrival of Birdsong, the defendant, should he appear. Two of them left in the government vehicle, and two officers concealed themselves in proximity to the tenant house.

At approximately 1:10 P.M., the defendant approached in his brown, 1967 Buick Electra automobile, accompanied by his wife, Mrs. Birdsong.

The officers in the automobile, on their watch away from the house, radioed to the officers concealed nearby the house as to his approach. The government automobile containing two officers followed behind, but did not overtake, the Birdsong automobile. Defendant's automobile continued down the dirt road, deadending at the house, where it pulled up and stopped.

At that point where the Birdsong automobile stopped, it was approximately seven or eight steps away from where the distillery was located inside the house.

As soon as the Birdsong automobile stopped, Federal agents jumped out from their car which was directly behind the tenant house and approached the Buick vehicle and ordered defendant to get out. They surrounded Birdsong and his wife.

Officer Krohn immediately reached inside defendant's automobile, got the ignition key, went back, opened and searched the trunk or rear end of the automobile, finding there seven gallons of moonshine whiskey without stamps attached.

He then instructed his co-officer, Mr. Taylor, to place the Defendant Tyree Birdsong under arrest, and to notify him he was then and there under arrest.

The thrust of Birdsong's argument on this appeal is that the investigators in question proceeded to his house without a warrant on the strength of an informer's tip that would not have passed muster had they sought to obtain a warrant under Aguilar v. Texas [1] or Spinelli v. United States [2]; entered his house without consent; obtained thereby information pertaining to the possession of a still and statements from the occupants of the house pertaining to Birdsong's ownership of the still; laid in wait for Birdsong, and when he arrived, searched his car, finding non-tax-paid whiskey; and then and there arrested him. In short, Birdsong argues that while the arresting officers may have had enough evidence to establish probable cause to arrest him, the officers obtained that evidence through a series of illegal acts.

The Government, in reply, does not contend that the entry into Birdsong's house was legal. Rather, it invites this Court to focus on the information the arresting officers had prior to entering the house. That information, the Government contends, was enough to give them probable cause to arrest Birdsong, and that being so, their search of his automobile, which the Government contends occurred contemporaneously with his arrest, was legal as a search "incident to an arrest." For information establishing probable cause to arrest existing prior to entry into Birdsong's house, the Government relies on (1) the informer's tip, (2) the officers' knowledge of Birdsong's prior record of, and reputation for, dealing in non-tax-paid whiskey; (3) the strong odor of cooking mash emanating from the house, which the officers detected when they first arrived, and (4) the officers' observation of a barrel of spent mash in the yard when they first arrived. The Government therefore urges us not to consider the entry into Birdsong's house in evaluating the legality of Birdsong's arrest and the search of his car. We accept that invitation.[3]

■■■ Relying only on the information available to the officers prior to their entry into Birdsong's house, we find that the decisional law in this area compels us to conclude that the seizure of Birdsong's whiskey did not violate his Fourth Amendment rights.

We think that the informer's tip,[4] and the officers' knowledge of Birdsong's

---

1. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

2. 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1960). See note 4 infra.

3. We have excluded from our analysis of the probable cause problem the information these officers obtained through their entry, without a warrant, into Birdsong's house because we think that entry was questionable. We note that the officers found a still in the house, and this information was admitted in the trial below. Nevertheless, the admission into evidence of this testimony, even if it were erroneous, did not prejudice the appellant, for he was acquitted of both counts to which that evidence pertained—carrying on the business of a distiller without having given

bond, and possessing an unregistered distillery.

4. We have concluded that Birdsong's reliance on Aguilar and Spinelli, supra, at text accompanying note 2, is misplaced. These two cases set out the standards for evaluating an informer's tip in obtaining a search warrant. In this case, of course, no warrants were sought or obtained. The difference is significant. In the Spinelli-or-Aguilar-type situation, probable cause must exist at the time the warrant is issued. When there is no warrant, however, probable cause is tested at the time of the arrest. The thrust of Birdsong's argument seems to be that the officers here had no right even to go to his premises until they had corroborated their tip in some way apart from the

past record of, and reputation for, dealing in illicit whiskey, coupled with the odor of mash emanating from Birdsong's house and the presence of a barrel of spent mash in the yard, supplied the officers with probable cause to arrest Birdsong upon his arrival at the house. The test for whether probable cause exists to make an arrest has been stated recently for this Court by Judge Ingraham in United States v. Breedlove, 5th Cir. 1971, 444 F.2d 422, as follows:

> An arrest without a warrant is not constitutionally infirm if at the moment the arrest was made the arresting officer had probable cause to make it. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act," Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948). "Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient to warrant a man of reasonable caution in the belief that' an offense has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1958)." Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327.

In the context of whiskey cases, the type of information relied on by the Government in this case has consistently been held sufficient to warrant a finding of probable cause. See United States v. Newsome, 5th Cir. 1970, 432 F.2d 51 [in-former's tip and defendant's reputation for dealing in non-tax-paid whiskey relied on]; United States v. Chapman, 5th Cir., 413 F.2d 440, cert. denied, 396 U.S. 903, 90 S.Ct. 217, 24 L.Ed.2d 180 (196) [informer's tip plus past record of and reputation for dealing in non-tax-paid whiskey]; United States v. Cothren, 4th Cir. 1967, 386 F.2d 364, cert. denied 390 U.S. 949, 88 S.Ct. 1038, 19 L.Ed.2d 1139 (1968) [informer's tip, odor of cooking mash emanating from dwelling, defendant's past record of and reputation for dealing in illicit whiskey, and observation of whiskey jugs being carried in and out of dwelling]; United States v. Price, 2d Cir., 345 F.2d 256, 259, cert. denied, 382 U.S. 949, 86 S.Ct. 404, 15 L.Ed.2d 357 (1965) [smell of mash cooking and informer's tip]. See also Fernandez v. United States, 9th Cir. 1963, 321 F.2d 283, 287, at n. 8.

■ Once the existence of probable cause to support a warrantless arrest is established, the search of appellant's car will be valid, if in fact, an arrest has taken place at the time the search is conducted. We find that we must agree that Birdsong was in fact under arrest the moment the agents initially interrupted his liberty—and that occurred when they ordered him out of his car, surrounded him, and took the key from the ignition. The case law makes it plain that Birdsong was under arrest at this moment, even though the formal words of arrest had not yet been uttered. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); United States v. Boston, 2d Cir., 330 F. 2d 937, cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964). "That the search and seizure may have preceded the formal announcement of the arrest by a few moments is not vital."

---

means of observing from "plain view" facts about Birdsong's premises. Of course, under *Spinelli* itself, officers obtain corroborating information by going to the scene of the suspected crime and observing what is in plain view—or smell—as the case may be, to corroborate their tip. Thus, even under *Spinelli*, the officers in this case would have been entitled to rely on what they observed and smelled before entering Birdsong's house to corroborate their tip. At that point, they could have had sufficient information to obtain a warrant. They also had at that point, however, sufficient probable cause to arrest without a warrant, which is the immediate question before us.

United States v. Boston, 330 F.2d at 939. *See also* Lovelace v. United States, 5th Cir. 1966, 357 F.2d 306, 310; Holt v. Simpson, 7th Cir. 1965, 340 F.2d 853, 856; Fernandez v. United States, *supra,* 321 F.2d at 287, n. 8. And it is well established that a search incident to an arrest, so long as the arrest is made with probable cause, does not require a warrant. Henry v. United States, *supra*; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Carroll v. United States, 267 U.S. 132, 155–156, 45 S.Ct. 280, 285–286, 69 L.Ed. 543 (1925).

Thus, under the applicable authority, the conclusion is inescapable that Birdsong's arrest was predicated on probable cause, and that the search of his car was simultaneous with, and therefore incident to, his arrest.

The conviction must be

Affirmed.