**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Garriga CHAPMAN and Richard Lee Scott, Defendants-Appellants.**

**No. 71–3473.
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1973.

Rehearing Denied April 3, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Herbert A. Bargeon, Jr., Orlando, Fla. (Court-appointed), for Chapman.

John V. Holmes, Orlando, Fla. (Court-appointed), for Scott.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Upholding this conviction of appellants Chapman and Scott under a four count indictment in which they were charged with conspiracy to commit, on June 19, 1969, the burglary of the Post Office at Fern Park, Florida (18 U.S.C. § 2115), damage to government property (18 U.S.C. § 1361), and theft of government property (18 U.S.C. § 641) depends, as now so often, on the validity of the search of Scott's car while it was in the sole possession of Chapman. Finding the search to have been legal under the circumstances we affirm.

The search occurred during the arrest of Chapman by an FBI agent on an outstanding warrant charging Post Office burglary in Alabama some six months previously.

On June 19, 1969 Appellants, in the company of two others, burglarized the Post Office at Fern Park, Florida. The group split up following the burglary. Defendant Chapman had possession of defendant Scott's car when he was observed by agent Bolyard of the FBI at a Holiday Inn Motel near Pensacola, Florida on June 23, 1969, some four days after the break-in. Agent Bolyard was having lunch with Sergeant Powell of the Escambia County Sheriff's Department at the Holiday Inn Motel on that date.

Agent Bolyard testified as follows. Arriving to eat lunch the agent recognized the car, a 1965 Ford, which he knew belonged to defendant Scott. This aroused his suspicion, because he had confidential information that the car contained burglary tools, and that it had been used in connection with another Post Office break-in some six months earlier in Alabama, the one for which defendant Chapman had already been indicted and for which he would soon be arrested pursuant to the outstanding warrant.

Following lunch, Agent Bolyard observed Chapman as he placed a suitcase in the trunk of the car. He knew of the outstanding warrant for Chapman's arrest, but he was not absolutely certain, although he stood some forty to fifty yards from the Scott car as Chapman placed the suitcase in the trunk, that the person in question was Chapman. He and Sergeant Powell got in Powell's car and drove to the point in the parking lot where the Scott car was located. They observed the car leaving the parking lot following another car and followed them. Tailing the car in traffic for 10 to 15 minutes they moved alongside of the Scott car were Agent Bolyard was able to make a positive identification of Chapman. They pulled the cars [1] to the curb on this busy street. Indeed, the curbing of the cars created a traffic jam and began backing up traffic in both directions. Agent Bolyard placed Chapman under arrest for the Alabama burglary. Agent Bolyard did not then know of the Fern Park burglary that had transpired four days prior to his arrest of Chapman.

Chapman got out of the automobile and was frisked for weapons. The car was still running and Agent Bolyard reached in and turned off the key. Agent Bolyard placed Chapman in the custody of Sergeant Powell and then began a search of the car. He found an automatic pistol on the transmission hump of the car in the front seat wrapped in a wool cap so that it was not visible as he opened the car door. He

---

[1]. Apparently the driver of the second car was arrested also. The testimony suggesting this, given by Agent Bolyard, indicates that the second car was left locked at the scene of Chapman's arrest.

took the keys from the car, opened the trunk and looked over the items in the trunk among which were a number of possible burglary tools,[2] and Chapman's suitcase which contained the evidence—a sheet of Holiday Inn stationery from an Inn near the Fern Park Post Office which catalogued the loot taken at the burglary there—that led to Scott's arrest. Since the stopping had occurred on a heavily traveled street and traffic congestion was developing the car was then taken to the Escambia County Sheriff's Office where a further search was made. The agent had been looking for burglary tools and hoped also to find stolen money orders along with a stolen validating stamp, taken in the Alabama burglary for which Chapman was arrested.

It cannot be disputed that the evidence obtained in this search and the leads which this evidence provided to the Government's investigatory efforts provided an important part of the Government's case against Appellants for the Fern Park Post Office burglary. The only question then, is the legality of the searches.

Appellants do not contend that Agent Bolyard lacked probable cause *for stopping or arresting* Chapman. They contend, however, that the searches of the car without a warrant were illegal.

■ The validity of the first search, which occurred on the highway, like any search without a warrant is subject to the existence of probable cause plus exigent circumstances.

■ Where, as here, an automobile has been stopped in the middle of a busy public thoroughfare and an unchallengable arrest is made on the basis of an outstanding warrant, the immediate exploratory inspection of the automobile reveals hand weapons prudent officers know to be used in burglaries, and the officer has particularized, well-grounded information that the car was employed in the Alabama burglary and its contents include both the fruits and the instrumentalities of crime, the authorities allow us to hold that there was both probable cause and the requisite exigent circumstances.[3] See, Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 and United States v. Ragsdale, 5 Cir., 470 F.2d 24 [1972]. Our conclusion is bolstered by the fact, which was known to the arresting officer, that the car did not belong to the driver and might be subject to an attempted or actual removal by its owner appellant Scott.[4]

■ *Chambers* further compels us to hold that if the intrusion of privacy on the highway was justified then the later inventory at the station house is unchallengable,[5] 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 429.

The Court's rationale was that since the officers could, under the circum-

---

2. Agent Bolyard had discovered a second pistol under the seat of the car. Ammunition for both weapons was found in the glove compartment. In the trunk he found oxygen and acetelyne tanks, cutting torches and various other tools along with sundry items of personal property.

3. United States v. Edwards, 5 Cir., 1971, 441 F.2d 749—having a similar fact situation—strongly suggests that this conclusion is sound.

4. *Cf.* United States v. Miles, 5 Cir., 1971, 445 F.2d 974, 975, decided before *Coolidge*, which states that under *Carroll, infra,* "police officers may search without a warrant any automobile that they have probable cause to believe contains contraband" citing *Chambers, supra.*

However, we need not explore the absolute parameters of valid searches under *Chambers, supra* or delve the limits of the forbearer Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. See Judge Heaney's opinion in United States v. Bozada, 8 Cir., 1972, 473 F.2d 389 [1972] where he undertakes to analyze *Carroll* and *Chambers,* before and after Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. *Bozada's* facts make it inapplicable to determination of the issues presented here and we therefore intimate no approval or disapproval as to its reasoning or result.

5. This was specifically stated as a principle of law in United States v. Edwards, *supra* note 3, 441 F.2d at 754.

stances, immobilize the car and prevent anyone from using it (i. e., seize the car) until a warrant was obtained, as long as probable cause was clearly present there was little practical difference between an immediate search and one conducted after awaiting a warrant.

Given this assumption the Court held that removal of the vehicle to the station house for reasons of convenience and safety, and there completing the search that had permissibly begun at the roadside—without benefit of a warrant— was not unreasonable nor constitutionally impermissible. 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 429 (note 10).

There is nothing in Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 which weakens our conclusion that exigent circumstances existed. *Coolidge* did not question the validity of *Chambers, supra,* and the Court relied heavily in *Coolidge* on the facts that the Defendant's car was not on a public highway and the objects searched for "were neither stolen nor contraband nor dangerous," 403 U.S. 443, 460, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564.[6] Furthermore, in *Coolidge* the car was immobilized in a private driveway while Defendant was incarcerated and there was absolutely no reason for the police not obtaining a valid warrant [7] prior to going out to Defendant's house to seize the car. Here, like in *Chambers,* there was no reasonable opportunity prior to the seizure for a warrant to be obtained.

*Chambers* teaches us that where "exigent circumstances" plus probable cause exist, a car may be searched without a warrant when it is stopped on a public highway and an arrest is made. The finding that probable cause existed is clearly supported and since we find that the requisite "exigent circumstances" existed here, we are unable to say that this search was invalid.

Affirmed.

---

6. United States v. Collins, 1971, 142 U.S. App.D.C. 100, 439 F.2d 610, which was the opinion of only one member of the panel, is clearly distinguishable on its facts. That case involved an armed robbery. The robbery had occurred six days earlier and a small coin box and a large amount of change were all that had been taken. Further, the court specifically found that the officers—who retrieved a small coin purse containing heroin from under Collins' foot—had no reasonable basis to believe that he had participated in any crime of which they had knowledge. Finally, the Court there chose to treat the search as a search of the Appellant's person rather than as a search of the automobile.

7. The search in *Coolidge* was pursuant to a warrant which the Court found to be invalid.