**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Rafael SORIANO et al., Defendants-
Appellees.**

**No. 72-1520.**

United States Court of Appeals,
Fifth Circuit.

July 2, 1973.

Rehearing and Rehearing En Banc
Denied Dec. 3, 1973.

470

Robert W. Rust, U. S. Atty., Michael P. Sullivan, Asst. U. S. Atty., Miami, Fla., Mervyn Hamburg, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Arthur Massey, Miami, Fla., for Soriano & Arroyo.

James J. Hogan, Alan E. Weinstein, Miami Beach, Fla., for Angel Aviles.

Albert J. Krieger, New York City, for Alfredo Aviles.

Julio F. Ferrer, Miami, Fla., for Mazza.

Philip E. Vitello, Coral Gables, Fla., for Marsh.

Gino P. Negretti, Miami, Fla., for Colon.

Gross & Krause, Manard A. Gross, Miami, Fla., for Sierra and Betancourt.

Before COLEMAN, GOLDBERG and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The government appeals from a pretrial order suppressing the fruits of two searches, a warrantless search of three suitcases outside the entrance to the Miami International Airport and a search under warrant of a house. Presumably the government bases its right to appeal on § 14 of Title III of the Omnibus Crime Control Act of 1970, 18 U.S.C. § 3731. We have considerable doubt whether we should review the order, but we do so with the aim that our caveat below[1] may give some guidance for future cases, and without any commitment on our part to review future pretrial suppression orders in a like posture. We conclude that the District Court correctly found the searches of the suitcases to be illegal but that it erred in suppressing fruits of the house search.

On December 17, 1971, federal narcotics agents received word from Sarah Cook that persons whom she knew as Freddie, Rafael, and Argentine were expecting a large shipment of narcotics. Cook previously had been a reliable informant to the FBI, and that agency had put her in touch with narcotics agents concerning this particular information. About 2:00 p. m. on January 4, 1972, Cook reported to a narcotics agent that she had been to the house of defendant Ana Rose Betancourt, had asked Betancourt whether the narcotics were in, and Betancourt had said "the stuff was in." Cook related that on this occasion she saw defendants Alfredo Aviles ("Alfredo") and Marta Sierra in Betancourt's house.

Agents promptly placed the Betancourt residence under surveillance, and at approximately 4:00 p. m. of the same day they observed Alfredo and Sierra leave the house carrying a brown trash bag, enter a car, and place the bag on the seat. Alfredo drove the car a few blocks away to a point where Sierra deposited the bag in a trash receptacle. An agent retrieved it. Inside were clear plastic bags and torn Christmas wrapping paper, each containing traces of a white powder which, on field test, was disclosed to contain an opium derivative. Later in the afternoon Cook told agents she had just left the Betancourt residence; that inside were Betancourt, Sierra, Angel Aviles ("Angel"), Rafael Soriano, and Edward Arroyo; that she had seen suitcases and Christmas packages there; and that the parties had been whispering to each other.

---

1. At a pretrial hearing the District Court initially suppressed the fruits of the house search on the ground that the warrant was defective but upheld the warrantless search of the suitcases. Under 18 U.S.C. § 3731 the United States has the right to appeal a pretrial order suppressing fruits of a search if the appeal is not taken for purposes of delay and if the evidence suppressed is material to the government's case. The government informed the District Court that it would exercise its right to appeal the order suppressing the fruits of the house search. The District Court then changed its ruling on the suitcase-search issue so that this court could review both suppression questions prior to trial. In effect the District Court has certified the suitcase-search question to us, and we are asked to review it without adequate findings below. '

Also there are nine appellees, some of whom appear to have standing as to one search, some as to the other, and some as to neither. The government has indiscriminately passed over standing without even recognizing the existence of the question. Appellees—eager as one would expect for any manna that might fall in their direction—have briefed the searches willy-nilly in six separate briefs, without regard to their respective relationships to the premises searched.

The right of the government to appeal pretrial suppression orders is not a right to bundle up all the suppression issues in the case and ship them to the appellate court which hopefully will sort out all the tangled skeins to the benefit of everyone concerned.

The agents continued their surveillance of the Betancourt residence. At 10:00 p. m. on January 4 they observed defendants Angel, Domingo Colon, and Soriano exit the Betancourt residence carrying three large suitcases. They entered a taxicab which agents followed to the entrance of the Miami International Airport. Acting without a warrant, the agents stopped the cab on the ramp outside the Airport entrance, arrested the passengers, opened the cab's trunk, and removed the suitcases. After the cab and the arrestees had been removed from the ramp the agents opened the suitcases, searched them, and seized plastic bags of white powder that are in part the subject of the pretrial motion to suppress.

Meanwhile other agents had been preparing affidavits and securing a warrant pursuant to which they planned to search the Betancourt residence. Between 11:00 and 11:30 p. m. an agent appeared before a magistrate who signed the search warrant, and the house was searched when an officer arrived with the warrant. The search produced evidence that defendants seek to suppress.

### 1. The suitcase search

■ The agents had probable cause to believe that the occupants of the taxicab were carrying narcotics in their suitcases, and appellees do not seriously contend otherwise. The agents were justified in opening the trunk and removing the suitcases under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and its progeny in this circuit.[2] The intrusion into the cab's trunk met the criteria for warrantless vehicular searches set out in Coolidge v. New Hampshire, 403 U.S. 443, 460, 91 S.Ct. 2022, 29 L.Ed.2d 564, 579 (1971). Under the circumstances the officers could legitimately seize these suitcases—they were not required to leave them in the cab or on the sidewalk to be taken away or to disappear. Warrantless temporary detentions of containers that officials have probable cause to believe contain contraband, such as parcels in transit, have been approved by the Supreme Court when demanded by the exigencies of the situation. See, e. g., United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). The crucial question before us is whether the agents, having seized the suitcases, could open and search them or whether, while retaining them in their dominion and control, they were required to appear before a magistrate and seek a warrant to examine them.

■ Indubitably the suitcases were "effects" within the fourth amendment's protection of "[t]he right of the people to be secure in their persons, houses, papers, and effects." To justify a warrantless search the government must fit it within an established exception. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions," and "the burden is on those seeking the exemption to show the need for it." Coolidge v. New Hampshire, *supra,* 403 U.S. at 454–455, 91 S.Ct. at 2030, 29 L. Ed.2d at 576.[3] As Justice Jackson ex-

2. E. g., United States v. Chapman, 474 F.2d 300 (CA5, 1973) ; Gomez v. Beto, 471 F. 2d 774 (CA5, 1973) ; United States v. Henderson, 469 F.2d 1074 (CA5, 1972) ; United States v. Gulledge, 469 F.2d 713 (CA5, 1972) ; United States v. Miles, 445 F.2d 974 (CA5), cert. denied, 404 U.S. 912, 92 S.Ct. 231, 30 L.Ed.2d 185 (1971).

3. In his dissenting opinion Judge Coleman urges that "reasonableness" is the test and that the suitcase search met that standard. Certainly the fourth amendment bans only unreasonable searches and seizures. But the interpretive caselaw has established beyond argument that, as set out by the language of the Supreme Court in the *Coolidge* opinion (after a full review of the precedents), there are certain searches which as a matter of law are *not* reasonable, and they are "searches conducted outside the judicial process, without prior approval by judge or magistrate," unless the government can carry

plained in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), with characteristic clarity:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . When the right of privacy must yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

*Id.* at 13–14, 68 S.Ct. at 369, 92 L.Ed. at 440. We must therefore analyze the reasons advanced by the government toward fulfilling its burden and determine if the warrantless search of the suitcases fits within one of the well-defined exceptions to the fourth amendment's warrant requirement.

██ At the threshold we put aside as inapplicable several theories sometimes advanced to justify warrantless searches of such personal effects as handbags, suitcases, billfolds, or briefcases. The government does not argue that the search was legitimately incident to a lawful arrest under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).[4] Nor does the government claim that the search was valid under the plain view doctrine[5] or under the theory of abandonment,[6] and, appro-

the burden of showing that the search falls within one of the "few well-delineated exceptions." This circuit has joined, as indeed it must, in the principle reiterated in *Coolidge.* See, e. g., United States v. Garay, 477 F.2d 1306 (CA5 1973, No. 72–3537, Judges Tuttle, Thornberry & Dyer) ("Subject only to a 'few specifically established and well-delineated exceptions,' searches conducted without the prior issuance of a warrant are per se unreasonable.") ; United States v. Ragsdale, 470 F.2d 24, 27 (CA 5 1972, Judges Brown & Clark, Judge Rives specially concurring) ("[A]ll warrantless searches [are] inherently unreasonable unless they fall within narrowly defined exceptions.") ; United States v. Scheffer, 463 F.2d 567, 574 (CA5 1972, Judges Ainsworth, Godbold & Morgan) ("[T]he burden is on the prosecution to come within some exception to the warrant requirement.") ; United States v. Resnick, 455 F.2d 1127, 1131 (CA5 1972, Judges Godbold, Simpson & Clark) (quoting the above-quoted language from *Coolidge*) ; United States v. Drew, 451 F.2d 230, 232 (CA5 1971, Judges Gewin, Goldberg & Dyer) ("[T]he burden of the government is always heavy when it urges any exception to the general requirement that searches and seizures must be predicated upon a warrant issued on probable cause. . . .") ; United States v. Sokolow, 450 F.2d 324, 325 (CA5 1971, Judges Gewin, Goldberg & Dyer) ("A search conducted outside the judicial process . . . is *per se* unreasonable . . .

subject to limited and well-defined exceptions . . . ."). See also United States v. Davis, 423 F.2d 974, 978 (CA5, Judges Gewin, Coleman & Dyer), cert. denied, 400 U.S. 836, 91 S.Ct. 74, 27 L. Ed.2d 69 (1970) ("The reasonableness of a search is not something which can be determined abstractly.").

4. In fact, in an exchange between court and government counsel at the hearing on motion to suppress, the government disclaimed reliance upon an incident to arrest basis, apparently recognizing that there was no possibility that the arrestees could get into either car trunk or suitcases to obtain weapons or destructible materials. Consequently of no direct applicability are such cases as Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) ; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ; United States v. Harrison, 461 F.2d 1127 (CA5 1972) ; United States v. Wysocki, 457 F.2d 1155 (CA5 1972) ; United States v. Nooks, 446 F.2d 1283 (CA5), cert denied, 404 U.S. 945, 92 S.Ct. 291, 30 L.Ed.2d 261 (1971) ; United States v. Stamps, 430 F.2d 33 (CA5 1970).

5. The exteriors of the suitcases were exposed to the world at large, but the contents, which were the target of the search, were concealed from view.

6. This court recently applied the abandonment doctrine to uphold a warrantless search of briefcases. See United States v. Colbert, 474 F.2d 174 (CA5 1973) (en

priately, there is no suggestion that constitutional analysis should vary because by hindsight we know the agents discovered contraband.[7] Instead the government stakes its case on two principal arguments: (1) exigent circumstances justified failure to secure a warrant; and (2) a warrant to search personal effects is not required after they have been legitimately seized.[7A]

### a. Exigent circumstances

■■ Exigent circumstances requiring an immediate search may operate in some cases to excuse time-consuming resort to judicial processes for issuance of a warrant. E. g., Terry v. Ohio, 392 U. S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889, 905 (1968); McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 93 L.Ed. 153, 158 (1948). The only exigent circumstance advanced by the government in this case is that opening the suitcases immediately might have disclosed information which possibly would

have led to the capture of others participating in the narcotics operation.[7B] This does not stand constitutional scrutiny.[8] The argument proves too much. If this court were to accept as legitimate the government's loosely defined concept of exigent circumstances, scarcely a case would remain in which a warrantless search for narcotics would not be justified. There is almost always a chance that newly discovered evidence will ensnare unknown accomplices. Also, a magistrate was readily available in the Miami area—one was contemporaneously signing a warrant to search the Betancourt residence—so the officers would have lost little time in detaining the suitcases until a warrant was secured.[9] Additionally, so far as the record discloses, none of the officers even entertained a notion that a temporary delay in searching the suitcases would have in any manner prejudiced their planned raid on the Betancourt residence. And, finally, the agents ac-

banc). In this case there is no evidence, nor does the government contend that there is any, that defendants disavowed ownership of the suitcases.

7. On-the-scene confirmation of the accuracy of information which could not otherwise be relied upon may contribute to probable cause to arrest, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), but the validity of a search not incident to arrest may not be supplied by what is found in the search.

7A. Our Brother Coleman equates the right to hold in custody those arrested with the right to search their suitcases. The short answer to this argument is that probable cause to arrest does not justify a warrantless search unless there is present one or more of the circumstances which permit warrantless searches—such as search for weapons incident to the arrest, the likelihood that the seized item may be moved or taken away, or the possibility that those arrested will escape.

7B. Judge Coleman refers to the possibility that the occupants of the car might flee while the officers sought a warrant to search the suitcases. In a proper case this would be an exigent circumstance to be considered. It is not present in this

case. The only exigency claimed is the hope that contents of the suitcases might lead to the arrest of other persons, and even that claim is without substance because the officers acknowledged that what they were searching for was the drugs they expected to find.

8. This case is unlike United States v. Johnson, 467 F.2d 630 (CA2 1972), in which the court upheld the warrantless search of a lawfully seized suitcase which the police had cause to believe contained a sawed-off shotgun. The court explained:

"As they stood in [a] transient and high crime area, their own safety and the safety of others required that they know whether they were holding a dangerous weapon over which they had no control."
Id. at 639.

9. While the precise distances between the Betancourt residence, the magistrate, and the Airport are not disclosed in the record, we know from the pattern of the agents' activities that they were relatively small. Also, the officers were maintaining radio contact among themselves so that they could have assisted each other in securing a warrant to search the suitcases.

knowledged what in good sense we all know—their purpose in searching the suitcases was to confirm that they contained the narcotics which the agents suspected they contained. Compare Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

### b. Post-seizure search theory

As previously pointed out, the officers would have acted within the fourth amendment by seizing and detaining the suitcases pending a request to judicial authority for a search warrant. The government theorizes that the justifiable seizure authorized an immediate, warrantless, on-the-scene opening and search of the suitcases. This theory is built on language in Chambers v. Maroney, *supra*, an automobile search case, in which the Supreme Court intimated that there was no constitutional difference "between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." [10] We are in fundamental disagreement with the government's theory.

*Chambers* was an automobile search case, and automobiles have traditionally enjoyed a special status under the fourth amendment. Since prohibition days warrantless searches of motorized vehicles have been upheld "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543, 551 (1925). Also, during the prohibition era "the car itself . . . was treated somewhat as an offender and became contraband." United States v. Di Re, 332 U.S. 581, 586, 68 S.Ct. 222, 225, 92 L.Ed. 210, 216 (1948). There is no indication in cases of the Supreme Court or of this circuit that the *Carroll* doctrine has any applicability to personality other than vehicles mobile because of their locomotive powers.[11] Against this historical background, language in *Chambers* tailored for the law of automobile search is not to be lifted out of context and applied globally to the whole world of personalty not bolted down.

In practice the government's theory that justification to seize personal effects is *ipso facto* justification to search them would transform the fourth amendment from the rule to the exception, and, for thousands of items of movable personalty which are routine

---

10. In United States v. Mehciz, 437 F.2d 145 (CA9), cert. denied, 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971), the court adverted to the "logic of *Chambers*" in upholding the warrantless search of an overnight suitcase. The holding was based, however, on the theory that the search was legitimately incident to a lawful arrest under Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In this case the government concedes that the search was not incident to arrest. To the extent that *Mehciz* rests on broad application of the above-quoted language of *Chambers* outside of its factual context, we disagree with it for reasons discussed *infra*.

11. The *Carroll* doctrine has been followed by the Supreme Court on four occasions: Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (automobile); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879

(1949) (automobile); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938) (automobile); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931) (automobile). See also Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (automobile). It has been followed in this circuit numerous times. In addition to the cases cited in note 2 *supra*, see, e. g., United States v. Ramey, 464 F.2d 1240 (CA5 1972) (automobile); United States v. Birdsong, 446 F.2d 325 (CA5 1971) (automobile); United States v. Rodgers, 442 F.2d 902 (CA5 1971) (camper-equipped pickup truck); United States v. Hill, 442 F.2d 259 (CA5 1971) (automobile). The only cases in this circuit even tenuously resembling extensions of *Carroll* are those applying the doctrine to uphold searches of trailers hitched to motorized vehicles. E. g., United States v. Gulledge, 469 F.2d 713 (CA5 1972).

appurtenances of Americans' day to day life, would read out of the fourth amendment the warrant requirement. Often the police are justified, as in this case, in seizing an article suspected of containing contraband, or evidence or fruits of crime, pending issuance of a warrant. For example, in United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), the Supreme Court upheld temporary detention by customs officials of a suspicious package, mailed first class, pending execution of a warrant to search its contents. See also United States v. Garay, 477 F.2d 1306 (CA5 1973) (No. 72–3537). These legitimate intrusions by way of seizure do not topple like dominoes all remaining privacy interests in the personal effect. As the Supreme Court explained in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), there is "no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require." *Id.* at 767 n. 12, 89 S.Ct. at 2042, 23 L.Ed.2d at 696 n. 12.[12]

■■■■ The fact of a legitimate seizure of personal effects does not, then, automatically justify a subsequent search. By the same measure, there may be cases in which, depending on the facts at hand, a subsequent intrusion will not significantly increase a pre-existing, legitimate interference with a protected interest.[13] To recite a familiar principle, "The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case." Sibron v. New York, 392 U.S. 40, 59, 88. S.Ct. 1889, 1901, 20 L.Ed.2d 917, 932 (1968). The task for us is to determine whether the search significantly added to the invasion of privacy occasioned by the initial seizure, and if so, whether the search was nevertheless within the "scope of the justification for the initial intrusion." United States v. Green, 474 F.2d 1385 (CA5 1973). See Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904 (1968) ["The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible."]

In this case the search significantly increased the interference with privacy. As a factual matter it differed markedly from the initial seizure, after which the contents of the suitcases remained undisclosed to the world. Moreover, common sense teaches that the citizen whose luggage has been lawfully seized prefers interposition of the judgment of an impartial magistrate before law enforcement officers may rummage through its contents. Also, the search exceeded the scope of the justification for the initial intrusion. While exigent circumstances required seizure of the suitcases and detention pending issuance of a warrant, they did not require an immediate, warrantless search of the contents.

Thus the search was unlawful because it intruded on an interest protected by the fourth amendment and because a warrant could have been readily obtained without prejudicing the need for effective law enforcement.

#### c. *Automobile cases*

■■■■ As an additional argument, the government cites a line of cases each up-

---

12. This statement was made in response to Justice White's argument in dissent that a full-scale search incident to arrest did not significantly add to the invasion of privacy occasioned by the initial justified intrusion on the arrestee's premises. See also Brett v. United States, 412 F.2d 401 (CA5 1969) ; United States v. Birrell, 470 F.2d 113 (CA2 1972) ; United States v. Small, 297 F.Supp. 582 (D. Mass.1969).

13. For example, the successive intrusions may come close in time, be practically identical in nature, and be analytically and factually separable only because made by two different sovereigns. See United States v. Green, 474 F.2d 1385 (CA5 1973).

holding the search of a container which has been found in a vehicle and which contained liquor or other contraband. With one immaterial exception the holdings of these cases are based on the rationale of Carroll v. United States, *supra*, which generally sanctions warrantless searches of vehicles stopped on highways and suspected of being used to transport contraband. The focus of analysis in each of these cases was the car itself.[14] In this case the government has expressly acknowledged that the subject of the search was the suitcases and has disclaimed the automobile as the subject of search. It has pressed for a ruling on the warrantless search of effects previously removed from the vehicle. While we rarely quote from briefs, we do so here to demonstrate the force with which the government presses for a ruling on the suitcase-search issue without regard to whether a full search of the vehicle would have been legitimate.

Our position is clear if the focus is placed not upon the taxicab, but upon the true subject of the search, the suitcases. . . . [I]n this case the subject of the search was not the vehicle itself, but the luggage known to be conveyed in the trunk. An examination of the movement of the suitcases would indicate that exigent circumstances still existed for the immediate warrantless search of the luggage at the airport notwithstanding the immobilizing of both the vehicle and the occupants.

The government having acknowledged the true subject of the search to be the luggage, we could not, and will not, construct a spurious validation of that search upon the right to search a mobile vehicle which was not the subject of search at all. *Cf.* United States v. Di Re, 332 U.S. 581, 585–587, 68 S.Ct. 222, 92 L.Ed. 210, 216 (1948).

### 2. The house search

The basis for the motion to suppress fruits of the house search was failure of the warrant to name the executing officer and the affiant.[15] On the night of

14. The government cites: Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (bottles of illicit liquor) ; United States v. Hill, 442 F.2d 259 (CA5 1971) (plastic jugs of illicit liquor) ; United States v. Roberts, 434 F.2d 1016 (CA5 1970) (sealed cartons of stolen merchandise) ; Armada v. United States, 319 F.2d 793 (CA5 1963), cert. denied, 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605 (1964) (suitcase containing cocaine) ; United States v. Garner, 451 F.2d 167 (CA6 1971) (briefcases containing guns, ammunition, and stolen money orders) ; United States v. Chalk, 441 F.2d 1277 (CA4), cert. denied, 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971) (bag of gunpowder inter alia) ; United States v. Sherman, 430 F.2d 1402 (CA9 1970), cert. denied, 401 U.S. 908, 91 S.Ct. 865, 27 L.Ed.2d 805 (1971) (camping pack sacks containing marijuana).

The only case cited by the government and not decided under the *Carroll* doctrine is United States v. Edwards, 441 F.2d 749 (CA5 1971) (5-gallon containers of illicit liquor). Nevertheless, *Edwards* is also an automobile search case, and in it, as in the other cases cited by the government, the focus of analysis was the car itself. The court upheld the search as a reasonable one on grounds that the car had been abandoned on a public right-of-way, with its motor running and lights on, by a fleeing suspect who had just led the police on a chase at speeds of 90–110 miles per hour. *Edwards* does not remotely resemble this case, in which the luggage was removed from the car prior to the search and in which the government insists that the subject of the search was the luggage, not the car.

15. In pertinent part the warrant read as follows :

"To_____.

"Affidavit having been made before me by _____ that he is positive that on the premises known as One floor dwelling at 3520 SW 4th St., Miami, Fla. . . . . there is now being concealed certain property . . . which [is] in violation of Title 21 U.S.C. § 841 (A1) and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the premises above described and that the foregoing grounds for application for issu-

January 4 Agent Richel, accompanied by two government attorneys, appeared before a magistrate and secured a warrant to search the Betancourt residence. Richel then radioed agents surveilling the residence that he had secured a search warrant and was en route to serve it. Before he arrived the surveilling agents knocked on the door of the house, and when Betancourt answered they placed her and the other occupants under arrest. The search that yielded the allegedly tainted evidence was not made until Richel's arrival with the warrant.

Rule 41(c), Fed.R.Crim.P., provides in part: "The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States."[16] Appellees' argument appears to be that because the warrant violated this provision, which has the force of statute, see Bacon v. United States, 449 F.2d 933, 937 n. 3 (CA9 1971), evidence taken during execution of the warrant was illegally seized and thus suppressible under Rule 41(e). We do not understand the basis for the motion to be that the warrant contravened the fourth amendment itself, which by its terms does not require that the warrant be directed to a specific officer.

■ Whether historically or by contemporary usage, the requirement that the serving officer be named in the warrant has come to protect several important interests. As the court explained in United States v. Gannon, 201 F.Supp. 68 (D.Mass.1961), one of its functions is to fix responsibility in the event the warrant is not executed.[17] Also, it enables the magistrate to make a presearch determination that an appropriate officer will serve the warrant. It assists the person whose premises are to be searched in ensuring that the search will be made by an authorized officer and not by an imposter. And it provides a record so that, if necessary, the judicial processes can make a postsearch determination that the search was conducted by an authorized officer.

Oral testimony at the motion to suppress hearing shows that in light of these interests the magistrate's failure to fill in the pertinent blank was a mistake of form only and not of substance. When Agent Richel appeared before the magistrate accompanied by two government attorneys he stated that he, Richel, would be the officer to serve the warrant. Also, Richel showed his identification and the warrant when he arrived at the Betancourt residence, and he told the occupants that he was Special Agent Richel from the Bureau of Narcotics and had been ordered by a magistrate to execute the warrant. At this time the occupants were in the company of other

ance of the search warrant exist . . . "You are hereby commanded to search forthwith the place named for the property specified, serving this warrant and making the search at any time in the day or night . . . ."

16. This requirement survived intact the 1972 amendments to the Rules of Criminal Procedure.

17. In *Gannon* Judge Wyzanski inferred that fixing responsibility for nonexecution was the sole reason for naming the serving officer. As our textual discussion shows, we do not agree that this is the only reason.

In his analysis Judge Wyzanski considered the relationship of Rule 41(c) to 18 U.S.C. § 3105, which provides:

"A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

He concluded that read together the provisions created two classes of officers authorized to execute the warrant: "(1) those mentioned in the warrant, and, additionally, (2) those officers authorized by law [to execute it]." 201 F.Supp at 71. In this case we do not reach the question whether § 3105 broadens Rule 41(c) by allowing non-named officers to execute the warrant, since we hold *infra* that the Rule's requirements were substantively satisfied.

agents who had knocked on the door, orally identified themselves as federal narcotics agents, and displayed their identification papers. And, before leaving the residence after the search, Agent Richel and two officers assisting him in the search signed their names on the reverse side of the warrant as the serving officers.

■ Thus despite technical noncompliance with the Rule, the relevant interests were protected. The magistrate knew in advance who was to serve the warrant, and the designated officer indeed served it; the occupants of the subject premises received a panoply of identifications and confirmations of identity from the serving officer and those assisting him; a record of the name of the serving officer and those assisting him was made by signatures on the reverse side of the warrant; and responsibility for execution of the warrant was fixed. We conclude that not only did defendants receive a full measure of Rule 41(c)'s protection, but that the possibilities of future compliance with the requirement that the serving officer be named in the warrant would not be enhanced by penalizing law enforcement officers who, while not in the precise form required, nevertheless in substance do everything required of them.[18] Moreover, we regard as small the possibility of another error of this sort. The search warrant is on a form prescribed by the Administrative Office of the United States Courts, and it has a blank for the name of the serving officer.

■ Nor is failure of the warrant to specify the name of affiant sufficient ground for suppression in this case. Fed.R.Crim.P. 41(c) provided at the time the search was made that the warrant "shall state . . . the names of the persons whose affidavits have been taken in support thereof." This provision has been deleted with the 1972 amendments to the Rules of Criminal Procedure. As the Committee's note to the amended Rule explains:

The requirement that the warrant itself state the grounds for its issuance and the names of any affiants, is eliminated as unnecessary paper work. There is no comparable requirement for an arrest warrant in rule 4. A person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued.

In this case the affiant's name was affixed to the affidavit, to which defendants have had access. The affidavit did not misrepresent his identity as had the affiant in King v. United States, 282 F.

18. Appellees rely on three principal cases: Perry v. United States, 14 F.2d 88 (CA9 1926) ; Leonard v. United States, 6 F.2d 353 (CA1 1925) ; United States v. Smith, 16 F.2d 788 (SDFla.1927). These cases are not helpful to disposition of this case for at least two reasons. First, they all rely in part on § 7 of Title XI of the Espionage Act of 1917, which provided in pertinent part:

"A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

40 Stat. 229. In 1948, when the criminal laws of the United States were consolidated under a single title, this section was amended to read:

"A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

62 Stat. 819 (emphasis added). As the italicized language shows, the categories of persons authorized to execute a warrant have been significantly broadened since rendition of the opinions relied on by appellees. See United States v. Sigal, 341 F.2d 837, 843 (CA3), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Second, none of the cases cited discussed whether the magistrate knew in advance who were to be the executing officers, whether the serving officers adequately identified themselves before serving the warrant, or whether the executing officers signed the reverse side of the warrant after executing it.

2d 398 (CA4 1960), so we are not concerned with a "willfull effort to mask the true source of the information." *Id.* at 400–401. See also United States ex rel. Pugh v. Pate, 401 F.2d 6 (CA7 1968), cert. denied, 394 U.S. 999, 89 S.Ct. 1590, 22 L.Ed.2d 777 (1969). At the hearing on the motion to suppress defendants were accorded an opportunity to cross-examine the affiant to the full permissible extent. With the case in this posture we decline to uphold the suppression order for technical noncompliance with a paperwork requirement.

### 3. Conclusion

Affirmed in part, reversed in part, and remanded for further proceedings.

COLEMAN, Circuit Judge, (concurring in part and dissenting in part):

I concur in that part of the opinion of the Court which sustains the validity of the residential search.

I must respectfully dissent from that part of the opinion which invalidates the opening of the suitcases and the examination of their contents.

At Page 4 of the typewritten copy, the majority opinion concedes that the agents had probable cause to believe that the suitcases contained narcotics, that the agents were justified in opening the automobile trunk and removing the suitcases, and that the intrusion into the automobile trunk met the criteria required for a warrantless vehicular search.

In the application of the required standard of reasonableness, what more could have been required?

The majority opinion concludes, however, that although the suitcases were lawfully seized from an automobile they could not, in the absence of a search warrant, be opened. Under the facts of this case an automobile certainly could have been searched but the majority holds that these suitcases are to be treated as if they had been seized from such a vehicle, in this instance an automobile at the top of the ramp in front of the Eastern Airlines entrance at an airport. It inescapably follows, I think, that the majority would take the well established law governing warrantless, probable cause, searches of automobiles and convert into a diametrically opposite rule for the warrantless, probable

cause, examination of the contents of packages taken from such vehicles. I have searched in vain for any reported case in the federal judicial system which declares this to be the law; as I understand it, the majority cites none.

Moreover, the majority opinion sets out on this journey in a case in which it is admitted that we are "without adequate findings below". Not only that, but the court below originally denied the motion to suppress the contents of the suitcases. A few days later, the ruling was changed for the purpose of making it appealable when the government announced its intention of appealing the residential suppression issue. We ought not to accept appellate jurisdiction under such circumstances. We do not issue advisory opinions. The majority confesses "considerable doubt" of its duty to review the matter.

But to return to the issue which the majority has agreed to decide, I would call attention to the concurring opinion of six Judges of this Court in United States v. Colbert, 474 F.2d 174 (alluded to in Footnote 6 of the majority opinion) in which these Judges would have upheld the warrantless, probable cause, search of brief cases found, not in an automobile, but on a city sidewalk. In my opinion, the suitcases could have been seized and searched as they were leaving the house. That the officers waited until they reached the airport should make no difference.

The majority says that the suitcases should have been detained until a warrant was obtained, that this would have only caused a "temporary delay". The same could be said for automobiles. Once stopped it is just as easy to detain an automobile as to detain its contents.

The opinion does not say what is to be done with the occupants of a vehicle from which the contents are taken. May they be detained while the warrant is obtained and the search consummated? If it is unreasonable to search a parcel taken upon probable cause from an automobile at the entrance to an airport office then it would be unreasonable to deprive individuals of their liberty while the warrant is obtained. On the oter hand, those in possession of the parcels ought not to be allowed to catch a plane while the hamstrung officer looks for a warrant.

It denies reality to say that this automobile was not searched, that only the suitcases were searched. True, the officers knew where to look for the suitcases, but they had to open the trunk of the car to get to them, so this was a search in the customary sense of the term, so held in cases too numerous to mention. The car was stopped, the trunk was opened, the suitcases were seized.

The majority declines to say that when officers stop an automobile on the probable cause that it contains contraband liquor they must have a search warrant to look in the boxes containing the jugs hidden in the trunk of the car. Why should the law be any different for heroin?

*Reasonableness* is the test. If the case were ripe for appellate decision I would, upon the considerations presently available to us, hold the search of these suitcases to have met every requirement of reasonableness. This is not an ordinary, tin horn heroin case. In the overall picture, nearly four hundred pounds of that deadly stuff was involved.

Since, however, the judgment of the District Court suppressing the contents of the suitcases was clearly entered as an after thought, not as its real opinion in the matter and since it was done solely to engender an appeal not otherwise available, I would remand for adequate findings and for a judgment thereon not prompted by the expressed desire to obtain "a kind of declaratory judgment".

I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.