**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Rafael SORIANO, Angel Aviles, Domingo Colon, Alfredo Aviles, Edward Arroyo, Alfredo Jose Mazza, Marta Sierra, Ana Rose Betancourt and Jack Marsh, Defendants-Appellees.**

**No. 72–1520.**

United States Court of Appeals,
Fifth Circuit.

July 15, 1974.

**148**

Robert W. Rust, U. S. Atty., Michael P. Sullivan, Asst. U. S. Atty., Miami, Fla., Mervyn Hamburg, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Arthur Massey, Miami, Fla., for Rafael Soriano and Edward Arroyo.

James J. Hogan, Alan E. Weinstein, Miami Beach, Fla., for Angel Aviles.

Albert Krieger, New York City, for Alfredo Aviles and Edward Arroyo.

Julia Ferrer, Miami, Fla., for Alfredo Jose Mazza.

Philip Vitello, Coral Gables, Fla., for Jack Marsh.

Gino Negretti, Miami, Fla., for Domingo Colon.

Gross & Krause, Maynard A. Gross, Miami, Fla., for Marta Sierra and Ana Rose Betancourt.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

GEE, Circuit Judge:

The United States appeals [1] from suppression of evidence obtained in searches of a house and of three suitcases. We adopt the panel opinion insofar as it reverses the trial court's suppression of the fruits of the house search.[2] Further consideration persuades us, however, to a somewhat different view than that of the panel and the court below toward suppression of the fruits of the suitcase search. Both aspects of the trial court's suppression order are therefore set aside. The issue before us is narrow, and we restate only such of the facts detailed in the panel opinion as are pertinent to our decision of it.

On the afternoon of January 4, 1972, federal narcotics agents had a Florida residence under surveillance pursuant to information from a reliable informant that a large shipment of illegal drugs had arrived there for distribution. At about 4:00 p. m., Alfredo Aviles and Sierra, who had been reported in the house by the informant, were seen to leave with a brown bag which they discarded several blocks away. Inspection revealed its contents to be clear plastic bags and torn Christmas wrapping paper, each of which bore traces of what field tests showed was an opium derivative. Later that evening, the informant was seen to leave the residence. She told confederates of the watching agents that inside she had seen suitcases and Christmas packages, and observed Alfredo Aviles, Angel Aviles, Sierra, Betancourt, Soriano and Arroyo conferring in whispers. Later still, Angel Aviles and

---

1. Pursuant to 18 U.S.C. § 3731. As noted in the panel opinion, 482 F.2d 469, 471 n. 1, the circumstances of the appeal are somewhat unusual and smack of the certified question. Concluding, however, that the published panel opinion requires modification, we do so.

2. It found the search proper and reversed the order of the court below suppressing its fruits. 482 F.2d at 477–481.

Colon got out of a cab, walked about a block to the house and entered. At 10:00 p. m., these two, plus Soriano, left the house carrying three suitcases which appeared heavy and took a cab to Miami International Airport. Agents who followed stopped the cab as it drew up to an airline entrance, arrested the passengers, removed the suitcases from its trunk, and peeked into one of them.[3] Clothing and plastic bags of a white powder later identified as heroin were revealed, which the court below suppressed as evidence.

■ That the agents had probable cause to believe the suitcases contained contraband is plain from the facts stated above, and that the seizure of the baggage was proper also.[4] At the warrantless suitcase search, however, the panel, with one judge dissenting, and the court below balked; we go on.

As a matter of pattern and logic, much can be said for the panel's view that, however they begin, whenever matters come to so stable a stand that a warrant can be obtained, one should be. The view is buttressed, moreover, by the practical need to control over-zealous police action. The question is whether the alternate course pursued here was fatal. Under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), it was not.

■ The Fourth Amendment prohibits with an equal hand both unreasonable searches and unreasonable seizures.[5] Chambers teaches that where automobiles and their contents are concerned, circumstances which justify an immediate seizure as reasonable justify an immediate search as well. There Mr. Justice White, speaking for a solid majority, said in words determinative of this case:

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

399 U.S. at 51–52, 26 L.Ed.2d at 428. Thus, the Supreme Court recognized and rejected the arguments for inflexibly requiring a warrant in circumstances such as these. And though it is true that the Court spoke of an automobile while we treat of containers in or just removed from one, the principle is not different. The officers who arrested Soriano and his companions indisputably had probable cause to believe that the vehicle contained contraband, a circumstance justifying the initial incursion into the trunk. Under established law in this circuit and elsewhere, this justification encompassed the search of containers in the vehicle which could reasonably be employed in the illicit carriage of the contraband. See, e. g., United States v. Halliday, 487 F.2d 1215 (5th Cir. 1973); United States v. Chapman, 474 F.2d 300 (5th Cir. 1973); United States v. Evans, 481 F.2d 990, 994 (9th Cir. 1973). Moreover, removing the suitcases from the trunk to the sidewalk did not dissipate the nexus between the containers

---

3. The record indicates, contrary to the panel opinion, that one suitcase was opened on the spot. A later search of the other cases revealed heroin in them also.

4. Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970); see also Coolidge v. New Hampshire, 408 U.S. 443,

91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

5. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

and the automobile, particularly since the search of one suitcase was conducted contemporaneously with its removal from the car. Since a search of the suitcase while situated in the trunk would clearly fit within the reasoning of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and *Chambers, supra*, the simple expedient of removing the bag to the sidewalk for the investigating officers' convenience did not instantaneously transform the incursion into something other than an auto search.[6] The search was therefore valid.

We note in passing a possible additional exception to warrant requirements upon which this search might have been sustained as reasonable: search incident to a lawful arrest. As noted by the panel,[7] the United States may have disclaimed reliance on this exception below, and at all events its reliance was somewhat wavering. And the exception is not specifically urged on appeal, though we have little doubt it would have been had the recent decisions of the Supreme Court in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), been available to the brief-writer. These, taken together with United States v. Draper, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), would have put the arrest-search exception very much in contention here, and while we do not rest our decision upon these authorities or that exception, our conclusion that we have reached the right constitutional result is strengthened by them.

Reversed.

GODBOLD, Circuit Judge, with whom THORNBERRY and GOLDBERG, Circuit Judges, join, specially concurring.

With the exception of dictum discussed below, I concur in the opinion of Judge Gee, based as it is upon the concept of automobile search and the nexus to an automobile search provided by the facts that the suitcases had just been removed from the taxicab and placed on the sidewalk and one of them searched contemporaneously with the removal. I understand the opinion to distinguish between a search of luggage under these circumstances and a situation in which luggage is removed from a vehicle subject to an automobile search and taken elsewhere to be searched at leisure. See footnote 6 to the opinion.

When the case was before the panel, I understood the government to eschew reliance upon automobile search concepts and to press for judicial sanction of a much broader right to search personal effects in general without regard to nexus to an automobile subject to search. See panel opinion, 482 F.2d at 477.[1] Before the court en banc the government, by other counsel, says that the panel misread it, and the government either more clearly defines its position or recedes from what I understood to be a voluntary narrowing of its case. With the issue for decision now redefined, I concur in a reversal on the suitcase search point.

The last paragraph of Judge Gee's opinion concerning United States v. Robinson[2] and Gustafson v. Florida[3] would be better left unsaid. Those two cases concern search of the person after arrest and are based upon the need to

---

**6.** Two additional observations are pertinent. We deal here with one continuous action, homogeneous in character. Had the luggage been taken elsewhere to be searched at leisure, the failure to utilize that leisure to apply to a magistrate might be a factor in the reasonableness calculus, though *Chambers* dealt with, and permitted, just such a search in the circumstances there presented. See also Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Nor do we face a second intrusion of more aggressive and repellant nature, as in Rochin v.

California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

**7.** 482 F.2d 469, 473, n. 4.

**1.** As noted by Judge Gee (see footnote 1) and the panel (footnote 1, 482 F.2d at 471) the proceedings before this court smack of a certified question.

**2.** 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

**3.** 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

disarm the suspect and to discover and preserve evidence. Search of moveable articles of personal property disassociated from the person fall within Chimel v. California.[4] Whether *Robinson* and *Gustafson* have any application (and, if so, the extent thereof) to *Chimel*-type cases is a question that should be left for another case in which the issue is presented and briefed. The law of search and seizure is confusing enough without beclouding future cases through judicial asides about the possible collateral effect in this case of decisions that are not directly involved and concern an issue that the parties might have but do not urge.

4. 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 635 (1969).