**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Ira ALMAS, Defendant-Appellant.**

**No. 74–2574**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1975.

Edward M. Kay, Hollywood, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Samuel A. Alter, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

---

* Rule 18, 5 Cir., See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

GEWIN, Circuit Judge:

The appellant Almas was convicted of the unlawful possession of controlled substances with intent to distribute them in violation of 21 U.S.C. § 841(a)(1). He was sentenced to two fifteen-month concurrent terms of imprisonment, and two additional two-year concurrent special parole terms.

Prior to trial, Almas filed an unsuccessful motion to suppress the introduction into evidence of the drugs seized subsequent to a warrantless stopping and search of his vehicle. His only contention on appeal is that the district court erred in denying his motion. Because we determine that the arresting officer had probable cause to stop as well as search the vehicle, we affirm the conviction.

The record reveals that on November 12, 1973, at 1:20 p. m. a reliable confidential informant,[1] working with the Drug Enforcement Administration Task Force in Miami, purchased 30 cc of Demerol in a "controlled buy" at a certain apartment in Broward County, Florida. After the purchase, the informant met with Task Force agents in Hollywood, Florida, and told them that he had purchased the Demerol from a man named "John" who had shown him a black attache case containing narcotics and told him of a brown suitcase filled with prohibited drugs under the bed in the bedroom. The informant further reported that occupants of the apartment expected a large shipment of narcotics from Atlanta, Georgia later that same afternoon.

At 2:15 p. m. police who were conducting surveillance at the apartment in question observed the arrival of a car with *Georgia* license plates. The police verified that it was registered in the name of an Atlanta resident.

While several DEA agents continued their surveillance of the apartment, other agents returned to their Miami office to debrief the informant, test the purchased drug, and prepare an affidavit and search warrant for the apartment. By 7:15 p. m. they had secured a valid search warrant from a U.S. Magistrate and begun the trip back to Broward County.

Agent Barretto, who had remained at the apartment, was immediately notified that a search warrant had been signed and issued and that agents were returning with it. He was advised that persons in the apartment were probably armed and that large quantities of pharmaceuticals in boxes or suitcases were allegedly within the apartment.

At 8:00 p. m. Barretto observed Almas exit the front door of the apartment carrying two suitcases and then pause to speak to someone who remained inside. Barretto walked past the apartment door and engaged Almas in conversation, glanced into the apartment, and proceeded to his car followed by Almas who walked to a brown Ford van, placed the two suitcases in the back of the vehicle, and drove quickly off. Barretto followed the van, and after attempting in vain to contact other agents by walkie talkie, stopped Almas some two blocks away. The agent disclosed his identification, took out his gun and ordered Almas out of the van.

At this time Almas immediately and voluntarily stated that he had a gun in his pocket and that the narcotics were in the back of the vehicle. Barretto searched the appellant and removed a .25 caliber automatic pistol from his back pocket. Barretto then walked around to the passenger side, got into the van, and drove with Almas to a nearby parking lot where he opened the suitcases in the back of the van, discovered that they contained over 5000 tablets of a variety of controlled pharmaceuticals and removed them from the van. The agent then returned to the apartment with Almas and the suitcases where he found

---

1. The informant met the test of reliability set down in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Informant had recently provided information which led to four arrests and four convictions and gathered the information in question in a manner known to agents as reliable.

that his companions had already executed the search warrant.

The intrusion at issue in this case was the stopping of the van and the seizure and subsequent search of the suitcases contained in it. The probable cause supporting the search warrant for the apartment will not in itself justify the stopping of the van, absent additional circumstances. In this case, the arresting agent had reasonable grounds to believe that Almas was removing illegal drugs from the apartment under surveillance. The search warrant for the apartment described a large supply of illicit pharmaceuticals. The government informant had indicated that one of the occupants of the apartment had told him of a large suitcase, albeit of a different color from the ones Almas carried, which was filled with drugs. Furthermore, it was probable, as the informant had advised, that more contraband had been delivered by the driver of the automobile from Atlanta. While Almas individually was not under suspicion in the beginning of the investigation, the arresting agent was justified in the reasonable belief that the suitcases which Almas carried from the apartment contained drugs. At the moment of arrest, the circumstances were "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Adams v. Williams, 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612, 618 (1972); Beck v. Ohio, 379 U.S. 89, 91, 145, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). See .also United States v. Wysocki, 457 F.2d 1155 (5th Cir. 1972). Almas's rapid departure in the van precluded the possibility of securing additional warrants to arrest him and search the vehicle.

The facts in this case are similar to those in United States v. Soriano, 497 F.2d 147 (5th Cir. 1974) (en banc) in which this court upheld the warrantless stopping of a taxi and seizure of suitcases found in the trunk. In *Soriano*, FBI agents had placed a house under surveillance after a reliable informant reported that the occupants were expecting a large shipment of narcotics. Several parties left the house and discarded wrapping paper containing traces of an opium derivative. Later, a group of men departed the dwelling carrying three large suitcases and drove away in a taxi. Federal agents stopped the taxi and arrested the passengers. This court, sitting en banc, concluded that the agents had probable cause to stop the vehicle and to seize and search the suitcases.

In affirming this conviction we rely on the Supreme Court's analysis of probable cause in Brinegar v. United States, *supra.*

In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

"The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at page 161, 45 S.Ct. [280], at page 288, 69 L.Ed. 554, 39 A.L.R. 790. And this "means less than evidence which would justify condemnation" or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, [11 U.S. 339], 7 Cranch 339, 348, 3 L.Ed. 364, [367]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555, 39 A.L.R. 790. (footnotes omitted)

338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1890. The foregoing principle has been approved in Adams v. Williams, supra, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Beck v. Ohio, supra.

Moreover, these events present a typical case justifying a stop, search and seizure under the probable cause plus "exigent circumstances" rationale of Carlton v. Estelle, 480 F.2d 759 (5th Cir. 1973), United States v. Chapman, 474 F.2d 300 (5th Cir. 1973), and United States v. Ramey, 464 F.2d 1240 (5th Cir. 1972). As heretofore noted, and we repeat for emphasis, the arresting officer had been fully informed of the illegal drug activities which had transpired and were transpiring at the apartment. Indeed, there had been a purchase of prohibited drugs at the very apartment from which Almas had departed. According to the reliable informant, an occupant of the apartment had a black attache case containing narcotics and spoke of a suitcase under the bed in the apartment filled with prohibited drugs. Occupants of the apartment also advised the informant of an expected shipment of a large quantity of illegal drugs from Atlanta, Georgia that very afternoon. This information was substantially corroborated by the arrival of a car with Georgia license plates which was ascertained to be registered in the name of an Atlanta resident. Government agents were advised by the informant that persons within the apartment were probably armed. As soon as Almas was stopped, he immediately volunteered the information that he was armed and that he was transporting narcotics. *Cf.* Fowler v. United States, 239 F.2d 93 (10th Cir. 1956). There was a direct nexus between the apartment and Almas. He departed the apartment locale quickly at a time when the agent conducting surveillance was alone. All of the foregoing factors clearly establish, under the cases cited supra, the existence of exigent circumstances which, plus probable cause, authorized the stop, the search, the seizure and the arrest.

Affirmed.