Darrell Eugene CARLTON, #166802,
Petitioner-Appellant,

v.

W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.

No. 72–3544.

United States Court of Appeals,
Fifth Circuit.

June 28, 1973.

Bertrand C. Moser (Court-appointed),
Houston, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Howard M. Fender, Guy C. Fisher, Lonny F. Zwiener, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before BELL, GOLDBERG and SIMPSON, Circuit Judges.

BELL, Circuit Judge:

At appellant's state trial for rape the prosecution introduced evidence which derived from a warrantless search of his automobile. There was no direct appeal from his conviction, but appellant pursued collateral state remedies and ultimately petitioned the district court for a writ of habeas corpus. He alleged that the warrantless search of his automobile had been unreasonable under the Fourth Amendment. The district court denied relief. We affirm.

The facts are not in dispute. Ruth Dean Bailey was raped on September 24, 1961, between 9:30 p.m. and 11:30 p.m. She went to a hospital. She was interviewed at the hospital by officers of the Harris County Sheriff's Department. She told the officers that a man had taken her at gunpoint, forced her into a blue and white car, driven the car into a field, and raped her there, in or near the car. She gave the officers a physical description of the man.

Her boyfriend, Mr. Schiefelle, was present at the interview. He told the officers that he knew of a person meeting the description of the rapist and that he knew the name of this person's employer, a Mr. Harris. After a short conference, the officers, joined by Mr. Schiefelle and other members of the Sheriff's Department, went to the home of Mr. Harris. Mr. Harris told them that he did have an employee who fit the description of the rapist. This employee drove a 1955 blue and white Pontiac. His name was Darrell Eugene Carlton. Mr. Harris gave the officers the address of Carlton's parents.

The officers then went to the home of Carlton's parents. Carlton's mother met them and told them that her son lived on West 22nd Street. Mr. Schiefelle said that he knew the exact address. The officers went to that address.

When they arrived at Carlton's home it was early in the morning, just after daybreak, several hours after the rape had occurred. Upon their arrival, they observed a blue and white Pontiac parked on the street in front of the house. They surrounded the house. Two officers went to the door. Carlton's wife met them and admitted them. They asked to see Mr. Carlton. She said that he was asleep. They said that they must talk to him. Carlton either awoke on his own or was awakened by the officers. Dressed only in shorts, which were spotted with blood, he went into the living room. The victim had been treated for head lacerations. Carlton was immediately placed under arrest.

Shortly, Carlton and the two arresting officers emerged from the house. The record discloses that on his way from the house to an awaiting police car, Carlton observed an officer of the Sheriff's Department bent over in his (Carlton's) car. The record discloses that the officer who conducted this search found a bloody shirt on the floorboard of the car, a button, and blood stains on the front seat.

During the period of the arrest and search, Carlton's wife was in the house. She was never placed under arrest; she was not asked to come with Carlton to the station house; her freedom was not restricted in any way.

After the search, the blue and white Pontiac was seized and taken to the Sheriff's Department. It was parked in the basement. Around 8:00 a.m. it was searched again, without a warrant. The second search revealed a fingerprint of the victim of the rape.

The evidence produced by these searches was introduced, over objection, at Carlton's trial. Carlton was convicted and sentenced to life imprisonment. As stated, he did not take a direct appeal.

After an evidentiary hearing on his federal habeas petition, the district court concluded that Carlton had not de-

liberately bypassed state procedures by failing to take an appeal and had otherwise exhausted all state remedies presently available to him. On the merits, the district court considered the propriety of the contested warrantless search, the sole issue presented on the merits, in light of the opinion of the Supreme Court in Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564. The court upheld the search on the ground that (1) the investigating officers had lawfully and inadvertently obtained a "plain view" of the automobile in their pursuit of Carlton and (2) because they had probable cause to believe that the automobile contained, and was itself, evidence of crime, they were entitled to seize it and search it without a warrant, under the "plain view" exception to the warrant requirement.

We uphold the search as well, but on somewhat different grounds.

■ It is the general rule that a search conducted without the prior approval of a magistrate is unreasonable, and therefore violative of the Fourth Amendment, even though a subsequent assessment of the circumstances of the search may reveal that the investigating authorities had probable cause. Coolidge v. New Hampshire, supra, 403 U.S. at 455, 91 S.Ct. 2022; Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. But cases do arise in which a search based on probable cause is reasonable, and constitutional, even though a warrant is not obtained beforehand. These cases represent exceptions to the warrant requirement.

The courts and the commentators have pigeonholed and labeled many of the "exceptional" cases. Thus some of the cases are said to represent the "automobile" exception, see, e.g., Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; others are said to represent the "plain view" exception, see, e.g., Ker v. California, 1963, 374 U. S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; others, the "search incident to a lawful arrest" exception, see, e.g., Chimel v.

California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; others, the "stop and frisk" exception, see, e.g., Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; others, the "abandonment" exception, see, e.g., United States v. Colbert, 5 Cir., 1973, 474 F.2d 174 (en banc); still others, the "hot pursuit" exception, see, e.g., Warden v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782, and so on. These labels are useful; they are not substitutes for thought. We use them, but we use them with care. Some cases fall between the categories. The labels do not always fit. Many decisions turn, not upon the labels, but upon a close analysis of the facts.

In the case before us, the investigating officials came upon Carlton's car in the early hours of morning, after a night of intensive investigation. They had obtained a physical description of the assailant and a description of his car, and they quickly pursued one lead after another until they came to the Carlton residence. They approached the house, knocked on the door, discovered Carlton inside, placed him under arrest, and conducted a simultaneous warrantless search of the car. The question is whether this course of action was constitutionally unreasonable.

Under the circumstances presented here, one important consideration in determining reasonableness vel non is the potential constitutional significance of courses of action other than the one pursued by the officers—courses which were open to them at the time of their arrival at the Carlton residence. Basically, there were three of these. First, the officers could have proceeded exactly as they did, except that instead of conducting a warrantless search of the car, they could have seized the car without a warrant, secured it against movement, and sought a warrant before conducting a search. Second, upon their arrival at the house they could have stopped in their tracks, sought a warrant for the arrest of Carlton and the search of the car, and then proceeded to the house to make the arrest only after the warrants

had been obtained. Third, they could have proceeded to the house without warrants and arrested Carlton, as they did, except that instead of conducting a warrantless search afterwards or making a warrantless seizure, they could have sought a warrant and delayed any search or seizure in the hope that the car would not be driven away before a warrant could be obtained.

With regard to the first alternative, we observe that under the Fourth Amendment there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant". Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. If a warrantless seizure of a car is constitutionally permissible, an immediate warrantless search of the car is permissible as well. 399 U.S. at 52, 90 S.Ct. 1975. The question, of course, is whether a warrantless procedure is permissible in either case.

In the present context the *Chambers* rule means that the warrantless seizure alternative was not a constitutionally significant one. This leaves the second and third alternatives and the questions they present: On the one hand, upon their arrival at the house, should the officers have stayed their pursuit of Carlton until arrest and search warrants were obtained? On the other hand, should the officers have proceeded to the house, arrested Carlton, and afterwards, without making a warrantless seizure, sought a warrant before searching the car?

As to the first of these questions, we think the officers were not obliged to obtain arrest and search warrants before proceeding to the point of arrest. They were not certain of the whereabouts of Carlton; they did not know the location of the car until they arrived at the Carlton residence. The pursuit had been from one clue to another in the early morning hours; and when they finally arrived at the house,

the trail was hot. They had probable cause to believe that Carlton was the rapist; and they knew that if he was, he was armed and potentially dangerous. The need for a prompt verification of his whereabouts was great. The reasonable and proper thing for them to do upon their arrival was to proceed to the house straightaway, knock on the door, ask if Carlton was there, and arrest him if he was. See Warden v. Hayden, supra.

Given our conclusion that it was not improper for the officers to fail to obtain warrants prior to Carlton's arrest, the only remaining question is whether it was improper for them to fail to obtain a search warrant after the arrest. Were they obliged at that point to seek a warrant and stay their search of the car in the hope that the car would not be moved before a warrant could be obtained? The answer to this question lies somewhere within the frame of reference established by Carroll v. United States, supra; Chambers v. Maroney, supra; and Coolidge v. New Hampshire, supra.

*Chambers* reaffirmed the proposition advanced in *Carroll* that a warrantless search of an automobile with probable cause is justified where circumstances make a warranted search impracticable. These circumstances exist where there is a likelihood that the car will be moved before a warrant can be obtained. Of course, a car is moveable in any case; and its mere capacity for movement does not alway mean it is likely to be moved. Other factors bear upon that likelihood. Thus cases do arise in which a warrantless search of a car is impermissible, either because the police had probable cause for search before their arrival on the scene, knowledge of factors bearing upon the likelihood of future movement, and time enough and assurance enough to obtain a warrant beforehand, Coolidge v. New Hampshire, supra; or because after arriving on the scene and perceiving probable cause for search, the police had assurance that the car would not be moved

before a warrant could be obtained, United States v. Payne, 9 Cir., 1970, 429 F.2d 169. In other circumstances, however, if there is to be any assurance that an effective search will ever be made, the police must act without pausing to submit the issue of probable cause to a magistrate. Chambers v. Maroney, 399 U.S. at 51, 90 S.Ct. 1975.

The foregoing analysis suggests that the officers in the present case were quite unlike the officers in *Coolidge:* At the point of arrest they had missed no genuine opportunity to obtain a valid warrant to search the car, since it would have been impracticable for them to interrupt their search for the rapist in order to secure warrants before proceeding to the house. In this respect they were most like the officers in *Carroll* and *Chambers.* Moreover, we think that once they had proceeded to the point of arrest, they, like the officers in *Carroll* and *Chambers,* were not obliged to stay their search of the car until a warrant could be secured. At that point circumstances obtained which were at least as exigent as those which justified a warrantless procedure in *Carroll* and *Chambers.*

There were differences between this case and those cases, to be sure. In *Carroll* the search was conducted after the car had been stopped, and its occupants arrested, on a highway in Michigan; in *Chambers* the car was seized without a warrant after it had been stopped and its occupants had been arrested about two miles from a Gulf Station which had been robbed in North Braddock, Pennsylvania; in this case the car was searched on a street in Houston, Texas. In *Carroll* and *Chambers* there was no suggestion that someone other than persons who were arrested knew of the arrest, or of the whereabouts of the car, or of the interest of the police in it; or that any known third person was actually in a position to exercise present dominion over the car. Here, the record shows that Carlton's mother knew her son was in trouble and knew the police were interested

in finding him; and the record shows that Carlton's wife was clearly in a position to exercise dominion over the car for innocent reasons or otherwise. In *Carroll* and *Chambers* the police searched the cars for evidence of bootlegging and robbery, respectively. In this case the officers searched the car for evidence of forcible rape. In *Carroll* and *Chambers* the cars were in motion when the police came upon them. Here the car was stationary.

These factual distinctions make no significant legal difference. We are unprepared to speculate whether, as a general matter, an automobile is more secure or less secure on the streets of Houston, Texas, than on a road in North Braddock, Pennsylvania, or on a highway in Michigan. Statistics could be produced which would show that, if anything, auto theft and vandalism are more prevalent in large cities than in rural areas and small towns; but these statistics are not in evidence, and we travel on the record. Quite apart from the risks posed by the potential intervention of thieves, vandals, and other hypothetical outsiders, this record does show that this car, stationed on a Houston street, not on a highway, was relatively close to persons who knew of it, knew of Carlton's trouble, and had an interest in him. The record does not suggest what these persons or any other person would have done if the officials had not exercised dominion over the car immediately upon the arrest. But the short of the matter is this: As regards the exigencies created by the potential intervention of third parties, the record reveals a case which is at least as compelling, if not more compelling, than *Carroll* and *Chambers.*

Nor do we think it matters that here the officers came upon a stationary car, made an arrest, and conducted a simultaneous warrantless search, while in *Carroll* and *Chambers* the officers came upon moving cars, stopped them, arrested the occupants, and then searched the cars. To be sure, the fact that the police were pursuing moving vehicles was

significant in *Carroll* and *Chambers*. The fact of pursuit made it impracticable for the police to obtain a warrant before their arrival at the point of arrest and search. But in the present case it was just as impracticable for the officers to obtain a warrant before the arrest of Carlton.

More critically, in *Carroll* and *Chambers* the movement of the cars ceased at the point of arrest, and at that point the police faced the same alternatives as those faced by the officers here. They could have conducted a warrantless search or made a warrantless seizure; or they could have stayed all action until warrants could be obtained. They were not required to follow this latter procedure because circumstances gave no assurance that an effective search or seizure could ever be made if it were not made immediately. We reiterate: In the present case, the circumstances existing at the point of arrest of Carlton were, if anything, even more exigent.[1]

Finally, we attach no special significance to the fact that in *Carroll* and *Chambers* the police searched the cars for evidence of bootlegging and robbery, while here the officers searched for evidence of rape. Whatever the viability of a distinction between the warrantless seizure of "contraband" or "instrumentalities" of crime, see Warden v. Hayden, *supra*, we think the legality of the initial search of the automobile was not established in *Carroll* and *Chambers* by the character of the evidence ultimately found within it. In any event, we note that in *Chambers*, as here, some of the evidence which was properly searched for and seized was "mere evidence" of crime.[2]

The judgment of the district court is affirmed.

1. Appellant argues that even if exigent circumstances did obtain at some point, all exigency was removed by the time of the initial search because the officers had effectively made a warrantless seizure of the car and were therefore in a position to prevent its removal. It may be true that the officers had effectively seized the car at the time of the initial search; but this does not mean that, having seized the car without a warrant, they were obliged to refrain from searching it until a search warrant could be obtained. This was the argument that was rejected in *Chambers*.

If a warrantless seizure is necessary to remove the exigencies that would justify an immediate warrantless search, a warrantless search subsequent to seizure is permissible.

2. Because we hold that the initial warrantless search was constitutional, we need not consider the circumstances surrounding the subsequent search of the car in the basement of the Sheriff's Department. If a warrantless search is permissible on the spot, it is permissible back at the station house. Chambers v. Maroney, supra.