The **UNITED STATES** of America on the relation of Thomas Roger McDOUGALD, Petitioner,

v.

**D. R. HASSFURDER,** Superintendent Division of Corrections, Raiford, Florida, Respondent.

No. 70–452–Civ–J–T.

United States District Court,
M. D. Florida,
Jacksonville Division.

March 15, 1974.

---

Joseph S. Farley, Jr., Mahon & Mahon, Jacksonville, Fla., for petitioner.

Donald K. Rudser, Asst. Atty. Gen., Tallahassee, Fla., for respondent.

ORDER

TJOFLAT, District Judge.

In this proceeding on petitioner's application for writ of habeas corpus filed pursuant to Title 28, United States Code, Section 2254, the Court has before it respondent's response (filed September 30, 1971) to the Court's order to show cause (filed August 31, 1971), the parties' opposing memoranda of law, and transcripts of two state proceedings on the issues herein.

The parties do not significantly differ over the relevant facts. The record establishes that at approximately 10:00 o'clock P.M. on April 1, 1968 the Old South Restaurant in Jacksonville, Florida was robbed of cash by two white males, armed with pistols and wearing stocking masks. Florida Highway Patrolman R. J. Ridaught, while in his patrol car, received a bulletin relating this information, and that the robbers left the scene in a white 1962 to 1964 Lincoln. Remembering that petitioner, a neighboring tenant in his apartment complex, drove a 1962 white Lincoln and that he had a reputation of criminal activity, Ridaught proceeded to his apartment complex. Petitioner's car was not at the complex, but petitioner and another male arrived in it within a few minutes, followed by another officer who had seen their car on the expressway. As the Lincoln drove through the complex's parking area, both the officers turned on their blue lights in an attempt to stop the suspects. The Lincoln did not stop immediately, but pulled into a

nearby parking space. Petitioner and his passenger, whom Ridaught knew to be a parolee from a conviction for robbery, alighted from their car and were confronted by the officers some 10 to 15 feet from the rear of the Lincoln. Leaving the other officer with the pair, Ridaught approached the Lincoln, looked in the open window on the driver's side and saw a box and some bills covering virtually the entire part of the floorboard on the driver's side. He then arrested both suspects for robbery, and conducted a thorough search of the car's interior, during which he found and seized two pistols, a cashbox, deposit slips, a rubber hose, and currency.

Petitioner contends that the seized items were illegally obtained and accordingly should have been suppressed at his trial. Petitioner argues as follows: Ridaught conducted a Fourth Amendment search when he looked through petitioner's car window. Since this search was made prior to the arrest, and at a time when no probable cause to arrest existed, it cannot be justified as a search incident to a lawful arrest. Since Ridaught did not have probable cause to believe that the car contained evidence, weapons or contraband, the search was not one where probable cause to search and exigent circumstances combined to justify the failure to obtain a warrant as in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Assuming, without conceding, that the officers had cause to perfect an investigatory "stop" of the suspects under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the search of the car 15 feet away was outside the permissible scope allowed in connection with such detainment. Further, the search cannot be justified under the "plain view" doctrine because Ridaught's sole purpose in walking 15 feet and looking into the car was to search for evidence. Since he had no legitimate reason to place himself in the position from which the bills were in "plain view" the search did not meet the requirements of the doctrine as expressed in Coolidge v. New Hampshire, 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Even assuming that the initial search through the car window can be upheld, the officers' failure to obtain a warrant to further search the car, after the arrest, was unjustified.

■■ The Court is not convinced by petitioner's legal analysis. The officers first interfered with the suspects' movement when they were stopped after alighting from the Lincoln. At that time, the officers told the suspects that a robbery had occurred and that their car fitted the description of the getaway vehicle. No questions were asked and no frisk was conducted. The Court assumes that this confrontation amounted to a "seizure" of petitioner's person within the meaning of the Fourth Amendment. See, Terry v. Ohio, supra, 392 U.S. at 16, 88 S.Ct. 1868. The reasonableness of the seizure is to be judged by the objective standard of whether the facts available to the officers at the moment of the seizure warranted a man of reasonable caution in the belief that the action taken was appropriate. Temporary detainment under this standard does not require that the officers have probable cause to arrest the detainee. The Court feels that the limited intrusion into petitioner's affairs was clearly justified by the facts underlying Ridaught's suspicions.

■■ Even were the detainment unjustified, it in no way affords petitioner relief herein for the reason that the ensuing actions concerning petitioner's car rest on grounds independent of the detainment. In their analyses, the parties assume a premise which the Court feels is unsupported. The Court acknowledges that Ridaught, in looking through the window of petitioner's car, conducted a "search", but it was not invalid because it did not involve an interest protected by the Fourth Amendment. Whether a "search" occurred turns on Ridaught's intent to conduct a "probing, exploratory quest for evidence of [a] crime," Marshall v. United States, 422 F.2d 185, 189 (5th Cir. 1970); whether

a protected interest was involved turns on the existence of a reasonable expectation of privacy with respect to the vehicle's exposed interior, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). The Court holds that petitioner had no reasonable expectation of privacy in the contents of his car which were plainly visible to one looking through the window without in any way trespassing on petitioner's property. *See,* United States v. Polk, 433 F.2d 644, 647 (5th Cir. 1970). It is accordingly unnecessary for the Court to decide whether any of the various exceptions to the search warrant requirement discussed by the parties apply to the initial search.

■ Having found that both the initial detainment of petitioner and the initial search of his car were valid, the Court holds that petitioner's arrest was valid. Officer Ridaught's discovery of the bills in petitioner's car pushed his suspicions into the realm of probable cause both to arrest petitioner and to search his car. The only remaining issue is whether the officer's second search, from the inside of the car, was valid. Without pigeonholing this search into one of the traditional categories of exceptions to the warrant requirement, the Court feels the search was valid under the analysis found in Carlton v. Estelle, 480 F.2d 759 (5th Cir. 1973). In that case, the court examined the various alternatives available to officers who have probable cause to search a vehicle whose owner has been arrested. It is clear that the officers in this case had no reasonable opportunity or probable cause to obtain a search warrant before arriving at petitioner's apartment, and it was not unreasonable for them to arrest him when they did. Seizing the car without a warrant after petitioner was arrested in order to secure it against movement or tampering while the officers obtained a search warrant would have been the legal equivalent of searching it without a warrant. Chambers v. Maroney, *supra,* 399 U.S. at 52, 90 S.Ct. 1975, 26 L.Ed.2d 419. The only issue then is whether, petitioner's arrest having been perfected, the officers were required to stay their search or seizure of the car until a warrant could be obtained, with the hope that it would not be moved or tampered with in the interim. In *Carlton,* the court felt that it would be unreasonable to require the officers to delay their search or seizure when relatives of the arrested person were aware of the situation. The court suggested that the risk of interference from vandals or thieves might in itself be enough to excuse obtaining a warrant, but that in any event the officers were not expected to give authorized persons an opportunity to tamper with the evidence. The Court attaches no legal significance to the fact that the record herein does not disclose the existence of any persons authorized by petitioner, relatives or otherwise, who might seek to intervene on his behalf. The exposed view of loose bills in the car might well tempt passersby to tamper with the evidence. It could be argued that the officers can protect the car from such unauthorized persons without effecting a seizure of the car, merely by performing their normal duty of safeguarding private property. As a practical matter, however, if the officers guarded the car against unauthorized interferences while a warrant was obtained, they would have to interrogate each person approaching the car as to his identity. The Court declines to place on officers the burden of either determining whether any authorized persons might seek to tamper with the car, or of accosting without cause strangers who might approach the car. The result in this case is that the officers acted reasonably in light of the alternatives open to them.

Accordingly, it is

Ordered:

The petition is dismissed with prejudice for the reasons stated herein, and this case is closed. In the event an appeal is taken from this ruling and a certificate of probable cause is requested, the same is denied.