LESLIE H. SOUTHWICK, Circuit Judge:
Rickey Nikki Beene entered a conditional plea of guilty, and the district court entered a judgment of conviction and sentence. Beene’s plea was conditioned on the right to appeal the denial of his motion to suppress evidence. obtained during a search of his vehicle and the statements he made following his arrest. We VACATE Beene’s conviction and sentence and REMAND for further proceedings in accordance with this opinion.
FACTS AND PROCEDURAL BACKGROUND
i In June 2012, a dispatcher advised Haynesville (Louisiana) police officers that an unnamed eallér reported that Rickey Nikki Beene pointed a gun at people on Mill Street, then left the scene driving a gray Honda Accord. Officers knew Beene to have dealt in illegal drugs.
'Beene lived at the intersection of a'state highway and Greer Street, Officer Danny Mills drove on the state highway to reach Beene’s' residence. As he approached Beene’s residence, he saw a silver Lincoln Continental parked -in the yard with a woman sitting in it. Officers later learned the woman was Beene’s wife. He turned onto Greer Street and saw Beene in a gray Honda Accord driving toward him. Officer Mills intended to make a stop based on the dispatcher’s information, but Beene turned into his driveway off of Greer Street before Officer Mills activated' his sirens to stop him.
Beene parked in Ifis driveway about five feet from the street. Officer Mills parked on the street at the end of the driveway to block Beene’s vehicle from exiting. Officer'Mills and Beene got out of their vehicles. Beene started walking toward Officer Mills. Officer Mills ordered Beene to stop at his vehicle and place his hands on the trunk. Beene kept coming toward Officer Mills. Officer Mills again ordered Beene to stop, and place his hands on the trunk. Beene did not comply,, so Officer *160 Mills pulled out his Taser, aimed it at Beene, and told him to stop. Beene again did not comply. .Officer Mills gave another command to stop, and Beene finally stopped. Beene' got on the ground as directed. Officer Mills decided to handcuff Beene based on his resistance. Officer Mills also believed he had probable cause to arrest Beene based on the report that Beene had brandished a firearm and because of what Beene “ha[d] done in the past.” Officer Trent Crook, who arrived later, helped Officer Mills handcuff Beene and lift him off the ground. Officer Mills advised Beene of his Miranda rights and placed , him in the back of Officer Crook’s vehicle.
While the officers were trying to handcuff Beene, his wife Shauntae Heard came “running around the corner.” Officer Mills explained that Beene was being placed under arrest and instructed Heard to stay back. She stopped moving toward the officer, but she continued to yell at him. Heard told Officer Mills that she owned the Honda that Beene had been driving. Officer Mills asked Heard whether she knew if there was. a gun in the vehicle. She said she did-not know. Officer Mills asked Heard if she minded if he checked for a gun, and she asked whether he had a warrant. Officer Mills did not have a warrant.
At this point, a third officer, 'Rickey Goode, arrived with a drug-sniffing dog. Officer Mills explained to Officer Goode that Heard had refused consent to check for a gun.. ■ Officer Goode retrieved his dog, and the dog “did a search pattern” around the Honda Accord. Meanwhile, the record indicates Beene remained in the back seat of Officer Crook’s vehicle and Heard stood by the house. Neither person had any encounter with the police dog.
The dog alerted, and on that basis, the officers believed they had probable cause to suspect that narcotics either were, or had been, inside the vehicle. Officer Goode opened the passenger-side door, and Officer Mills immediately saw a bag of marijuana at the front of the driver’s seat. They also found crack cocaine, a substantial amount of cash, and a loaded .380 caliber handgun.
The Chief of police, Anthony Smith, also was at the scene. 'When the contraband was retrieved, Heard, who was standing near the mobile home talking to Chief Smith and Officer Crook, passed out and fell to the ground. Emergency medical personnel arrived, but Heard revived without their assistance and refused any treatment. Chief Smith would later testify that after she recovered, he obtained her written consent to search the residence. Allegedly based on that consent, Chief Smith and Detective Adrian Malone searched the house and discovered additional marijuana, crack cocaine, a small amount of methamphetamine, and a digital scale.
Heard was arrested for resisting the officers’ orders. She and Beene were taken to the police station in Haynesville. While at the station, Officer-Crook read Beene his Miranda rights a second time. Detective Malone arrived at the police station to obtain Beene’s recorded statement. Detective Malone advised Beene that he intended to question the people in the neighborhood near the Mill Street Apartment Complex, who had said they saw Beene brandishing a firearm earlier that day. Beene explained that he possessed the firearm that day only for self-defense.
Beene was charged in a six-count indictment with (1) being a felon in possession of a firearm and ammunition, (2) possession with intent to distribute crack cocaine, (3) possession with intent to distribute cocaine powder, (4) possession with intent to distribute methamphetamine, (5) possession with intent to distribute marijuana, and (6) *161 possession of a firearm in furtherance of drug trafficking. Beene • moved to suppress evidence of (a) the firearm, ammunition, and drugs seized from his automobile, (b) evidence of drugs seized from his residence, and (c) the post-arrest statements he made about his possession of the firearm. .
. After an evidentiary hearing, the district court denied Beene’s motion as to the evidence seized from his vehicle, finding that it was admissible because it was the result of a search incident to a lawful traffic stop. The court also rejected Beene’s argument that the search of the automobile was unlawful because of the presence of the drug-sniffing dog* in the driveway of his residence. ' Additionally, the court denied Beene’s motion to suppress his post-arrest statements.
The district court granted Beene’s motion to suppress the evidence of drugs seized from his residence. The court noted that two versions of the consent form were produced at the hearing: one that contained Detective Malone’s signature as a witness to :Heard’s consent, and another that did not. Although the court questioned much of Heard’s testimony,- it also found Chief Smith’s testimony that he obtained Heard’s consent to search was not credible. The court concluded that, despite Chief Smith’s and . Detective Malone’s testimony that they were both present for the signing of the consent form, “there exists indisputable evidence that the consent form was falsified.”
Beene filed a motion to-reconsider the district court’s ruling denying his motions to suppress the evidence obtained from the vehicle. Among Beene’s arguménts was that the automobile exception to the warrant requirement did not apply, which was the first time this exception had been addressed by either party. The Government filed a response without referring to the automobile exception. The district court summarily-denied Béene’s motion to reconsider.
Beene entered a conditional guilty plea to the felon-in-possession count, reserving his right to appeal the denial of his motion to suppress with respect to the search of .his automobile and his post-arrest statements. The district court sentenced Beene to 96 months of imprisonment. Beene timely appealed.
DISCUSSION
When a district court denies a motion to suppress evidence, .we review the factual findings :for clear error and legal conclusions about the constitutionality of the conduct-of law enforcement officers .de novo. United. States v. Gusman, 739 F.3d 241, 245 (5th Cir.2014). “The clearly erroneous standard is particularly deferential where .. denial of a suppression motion is based on live oral testimony ,because the judge had the opportunity to observe the demeanor of the witnesses.” United States v. Robinson, 741 F.3d 588, 594 (5th Cir.2014) (quotation marks omitted). “Factual findings are clearly erroneous only if a review of the record leaves this Court with a definite and firm conviction that a mistake has been committed.” United States v. Hearn, 563, F.3d 95, 101 (5th Cir.2009) (quotation marks omitted). We review the evidence in the light most favorable to the party that prevailed in the district court. United States v. Zavala, 541 F.3d 562, 574 (5th Cir.2008).
The district court held that the search of • Beene’s ’vehicle was a lawful search incident to arrest. We disagree. Under that exception* an officer may search an arrestee’s vehicle when it is “reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.”- -Arizona v. Gant, 556 U.S. 332, *162 343, 129 S.Ct. 1710, 173 L.Ed.2d 485(2009) (quotation marks omitted). In this case, the crime of arrest was resisting arrest. Beene’s vehicle would not contain evidence of that crime. The Government barely defends the basis for the district court’s ruling, but instead argues the evidence was admissible simply as a result of a dog’s alerting to the presence of contraband, or under the automobile exception.
Beene argues that the district court erred when it denied his motion to suppress, contending that the search of his automobile violated the Fourth Amendment because it was not conducted pursuant to a lawful traffic stop, did not fall within an applicable exception to the Fourth Amendment, and occurred in his driveway, which allegedly was part of the curtilage of his home. He also argues that, because the searches of his automobile and residence were unlawful, his post-arrest statements were “fruit of the' poisonous tree.”
We will first discuss the úse of the dog.

I, Use of Drug-Sniffing Dog

A dog sniff is typically not a search; it may be conducted even when a detention is not drug-related so long as it does not unreasonably prolong the detention. See, e.g., Illinois v. Caballes, 543 U.S. 405, 407-09, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). A sniff may nevertheless be an únwarranted search when it involves an intrusion into a constitutionally protected area, such as the home or its curtilage. See Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 1417-18, 185 L.Ed.2d 495 (2013). In determining if an area is part of the curtilage, we consider: (1) “the proximity of the area claimed to be curtilage to the home,” (2) “whether the area is included within an enclosure surrounding the home,” (3) “the nature of the uses to which the area is put,” and (4) “the steps taken by the resident to protect the area from observation by people passing by.” United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).
Here, as the district court noted, only the driveway’s proximity to the residence weighs in favor of a finding that it was part of the curtilage of the home. The driveway was open and could be observed from Greer Street. Although fences encircled part of the driveway, nothing blocked its access or obstructed its view from the street. Finally, neither Beene nor Heard took steps to protect their privacy, such as posting “no trespassing” signs. In an unpublished opinion, we held that a similar driveway was not part of the curtilage of a defendant’s home; we agree with that analysis. See United States v. Moffitt, 233 Fed.Appx. 409, 411 (5th Cir.2007). Likewise, we hold-that the driveway here was not part of the curtilage of Beene’s home.
Because Beene’s driveway was not part of the curtilage of his home or of any other constitutionally protécted area, the police were permitted to bring a dog onto his property to sniff his vehicle. “In a long line of cases, the Supreme Court has held that, except for a house’s, curtilage, the Fourth Amendment does not protect people from official searches characterized as sights seen in the open fields.” Husband v. Bryan, 946 F.2d 27, 29 (5th Cir.1991) (quotation marks omitted) (collecting cases). The Court has clarified that “the term ‘open fields’ may include -any unoccupied or undeveloped area outside of the curtilage”: “An open field need be neither ‘open’ nor a ‘field’ as those terms are used in common speech.” Oliver v. United States, 466 U.S. 170, 180 n. 11, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Courts have applied the open-fields doctrine to myriad search locations beyond a literal field. See 1- Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment *163 § 2.4(a) (5th ed.2014) (collecting cases). Under this expansive definition, Beene’s driveway qualifies as an open field.
An open field is not a protected area because it does not “provide the setting for. those intimate activities” protected by the Fourth Amendment, and “as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be.” Oliver, 466 U.S. at 179, 104 S.Ct. 1735. Moreover, the Supreme Court expressly rejected- a .case-by-case review of open-fields cases-as an unworkable accommodation, noting that such an “ad hoc approach not only makes it difficult for the policeman to discern the scope of his authority, it also creates a danger that constitutional rights will be arbitrarily and inequitably enforced.” Id. at 181-82, 104 S.Ct. 1735 (citation omitted).
An investigation of an open' field, be it visual, olfactory, or otherwise, does not implicate the Fourth Amendment because “an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers.” Id. at 181, 104 S.Ct. 1735. The open-fields doctrine does not permit law enforcement officers literally to unearth evidence, contained within an open field but hidden beyond plain view. See, e.g., Husband, 946 F.2d at 29. Indeed, any “physically invasive inspection” is commonly recognized as uniquely intrusive, even when performed in a public setting. Bond v. United States, 529 U.S. 334, 337, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000). A dog sniff, though, is not a physically invasive inspection.
We find no basis to hold that the Government must provide justification for the dog’s presence under the open-fields doctrine. The Supreme Court in Jardines concluded that a dog sniff became a search due to the physical intrusion onto the defendant’s constitutionally protected property. See 133 S.Ct. at 1417-18. No such intrusion occurred here. Indeed, as the Supreme Court has noted, “an open field, unlike the curtilage of a home, is not one of those protected areas enumerated in the Fourth Amendment. The government’s physical intrusion on such an area ... is of no Fourth Amendment ' significance.” United States v. Jones, — U.S. -, 132 S.Ct. 945, 953, 181 L.Ed.2d 911 (2012) (citations omitted). Because a dog sniff is not a search in a public place, and because the intrusion on an open field has no Fourth Amendment significance; it must be the case that a dog sniff is not a search in an open field.
The use of police dogs can be intimidating! There is no specter of that here. Neithér Beene nor Heard had any contact with the dog. Even if use of a police dog presents a greater intrusion than a typical open-fields search, there is no reasonable expéctation of privacy in sights or odors existing in an open field, in plain view or smell, which do not require a physically invasive inspection. Because the dog sniff was' permissible, we must next determine whether the dog’s alert justified the police officers’ search of Beene’s vehicle.

II. Automobile Exception to Warrant Requirement

The Government claims the search of Beene’s vehicle fell within the automobile exception to the Fourth Amendment’s warrant requirement. See generally United States v. Fields, 456 F.3d 519, 523 (5th Cir.2006). The Government did not present, and thus the district court did not address, this exception to the warrant requirement. Nonetheless, Beene injected the' issue in his motion to reconsider before the district court. He also made - arguments concerning the exception in his briefing on appeal. Beene has not argued *164 we should not consider the issue, but only that the automobile exception does not apply on these facts.
Under the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause -to .believe it contains contraband. See United States v. Ross, 456 U.S. 798, 807-09, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The exception'is justified by the mobility of vehicles and occupants’ reduced expectations of privacy while traveling on public roads. See California v. Carney, 471 U.S. 386, 392-93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). It has been applied to warrantless searches of vehicles parked in driveways or lots other than those used by the defendant for residential purposes. See, e.g., Pennsylvania v. Labron, 518 U.S. 938, 939-40, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (applying the exception to the search of a vehicle located on a city street and another located outside of a farmhouse); Mack v. City of Abilene, 461 F.3d 547, 550, 552 (5th Cir.2006) (applying the exception to the search of a vehicle located in a parking lot outside of a restaurant and another located in the defendant’s apartment complex parking lot); United States v. Sinisterra, 77 F.3d 101, 105 (5th Cir.1996) (applying the exception to the search of a vehicle found in a parking lot outside of a shopping center).
In contrast, when a vehicle is parked in thé defendant’s residential drive-way, we generally require that' there be exigent circumstances justifying a search. See Guzman, 739 F.3d at 246 n. 8; United States v. Pruett, 551 F.2d 1365, 1369-70 (5th Cir.1977). If exigent circumstances were present in this case, those circumstances, taken together with the probable cause created by the exterior dog sniff of Beene’s vehicle, would justify the interior search of his' vehicle.
We have upheld a warrantless search of a vehicle parked in front of a defendant’s home after the police, investigating a just-reported rape, followed a lead to the defendant’s home and discovered the defendant had blood on his clothes. See Carlton v. Estelle, 480 F.2d 759, 760 (5th Cir.1973). We emphasized the impracticability of obtaining- a warrant-before arriving at the defendant’s home: officers were not required to “stay[ ] all action until warrants could be obtained” since “circumstances gave no assurance that an effective search or seizure could ever be made if it were not made immediately.” Id. at 763-64. Additionally, we noted that the defendant’s wife was present in the house and that his mother, who had told the police where the defendant lived, resided in the neighborhood. Id. at 763. On those facts, we underscored the- exigencies involved when a vehicle is “relatively .close to persons who knew of it, knew of [the defendant’s] trouble, and had an interest in” the defendant. Id.
In a more recent case, officers investigating a bank robbery followed a tracking signal located inside a stolen pack of money to a vehicle parked in the defendant’s driveway. See United States v. Reed, 26 F.3d 523, 525 (5th Cir.1994). We upheld a warrantless search of the vehicle even though the defendant and his -wife had been arrested and the police had seized the only known[1] set of keys to the vehicle. See id. at 525, 530. “To leave the vehicle or post some undefínéd guards while securing a warrant with the valuable evidence inside would be risking the loss of that evidence and potential injury to [the officers].” Id. at 530. We rejected the defendant’s contention that officers could have secured the vehicle while waiting for a search warrant, reasoning that “if a war-rantless seizure is permissible, a warrant-less search ■ is- permissible as well.” Id.
*165 Whether “exigent circumstances were present is a finding of fact” to be made by the district court. Id. at 528. In this ease, the district court did not make factual findings about whether exigent circumstances were present sufficient to justify a warrantless search under the automobile exception. Indeed, the Government argues for the first time on appeal that the automobile exception applies. Accordingly, we vacate the judgment of the district court and remand for further proceedings.

III. Post-Arrest Statements

“Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search)” including confessions made after an unconstitutional search, “must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.” United States v. Cotton, 722 F.3d 271, 278 (5th Cir.2013). Beene challenges the post-arrest statements he made in response to questions focusing almost exclusively on his possession of the firearm. The officers discovered this weapon as a result of the search of Beene’s vehicle. The Government contends the challenged post-arrest statements should not be suppressed because they were “not obtained by exploiting the illegal search [of Beene’s house], but based on evidence obtained during the legal search of the Honda.”
The admissibility of Beene’s post-arrest statements is contingent on the lawfulness of the warrantless search of Beene’s vehicle. The only bases resolved by the district court or presented to that court at the suppression hearing by the Government for upholding the warrantless search have now been reversed. Additionally, the fact that Beene’s post-arrest statements were made four hours after the search of his vehicle, and after he was given warning of his- constitutional rights, is of no consequence. See Taylor v. Alabama, 457 U.S. 687, 690-91, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982) (holding that six hours between an illegal arrest and a confession, paired with three distinct Miranda warnings, did not constitute sufficient attenuating circumstances). ■ Thus, Beene’s post-arrest statements must be suppressed in the absence of some other ■ basis for 'their admission.
Because we remand for further proceedings, the admissibility of Beene’s post-arrest statements may be reconsidered if an alternative basis to justify the search of Beene’s vehicle is presented to the district court and accepted.
# * ‡
The conviction and sentence are VACATED, and the case is, REMANDED for further proceedings consistent with this opinion.

. Our jurisprudence may need to begin placing a renewed emphasis on the security interests that the Fourth Amendment protects. As a result. of technological advancements, we now live in an information age in which our everyday tasks often result in our sharing of vast amounts of personal data.. A focus on the individual security interests implicated by the government's efforts to obtain such information may provide a more appropriate context in which to analyze the seemingly diminishing scope of the. Fourth Amendment's protections in this area.