*331 JAMES E. GRAVES, JR., Circuit
Judge, dissenting:
Under cover of darkness, at approximately five o’clock in the morning, a police officer walked through an alleyway to the door of Holley’s attached, rear-entry garage.[1] The officer brought along a drug-detection dog who allegedly “alerted to the presence of the odor of an illegal drug while sniffing the garage door.” Despite those facts, the majority affirms the district court’s denial of Holley’s motions to suppress.'Because I conclude that the district court erred, I respectfully dissent.
I.
In Davis v. United States, the Supreme Court held “that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule.” 564 U.S. 229, 232, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). In 2008, when these searches were conducted, there existed no “unequivocal” and “binding” Fifth Circuit precedent “specifically authorizing” police to come onto a person’s property with a drug-detection dog in order to have the dog sniff at the garage doors. The majority states that “Holley does not point us to a single pre-Jardines decision that invalidated a search factually similar to those under review.” Like Holley, the Government cannot point to a single binding decision in which a similar search was deemed valid.
The majority states that the search was “ ‘close enough to the line of validity that an objectively reasonable officer would not have realized that the Gray Wolf Trail and Winterwood Lane warrants were tainted.” The majority adds that “[i]n these circumstances, ‘[t]o suppress the evidence derived from th[ese] warrants] would not serve the interest of deterring future constitutional violations.’ ” United States v. Massi, 761 F.3d 512, 532 (5th Cir. 2014) (citing United States v. Leon, 468 U.S. 897, 919-20, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). I disagree. This is not the sort of police action that the good-faith exception is intended to protect.
II.
The good-faith exception is inapplicable in this case. Under the good-faith exception to the exclusionary rule, evidence is admissible if it is obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. Leon, 468 U.S. at 927-28, 104 S.Ct. 3405. The majority reasons that the disputed dog sniffs took place in 2008 before the Supreme Court’s issuance of Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) — which found that a warrantless dog sniff of a person’s porch violated the Fourth Amendment — and does not address that opinion’s effect on this case. Instead, the majority suggests that one unpublished opinion from the Fifth Circuit, United States v. Tarazon-Silva, along with a few other non-binding cases,[2] demonstrate that the dog sniffs *332 were “close enough to the line of validity.” 166 F.3d 341, 1998 WL 912178 (5th Cir. 1998).
In Tarazon-Silva, a panel stated that a “dog-sniff of the outer edge of the garage and the dryer vent on the exterior wall of the [defendant’s] house did not occur on protected curtilage” and thus the defendant “had no reasonable expectation of privacy in those areas.” Id. at *1. Reliance on Tarazon-Silva is problematic for a least two reasons. The first is that Tara-zon-Silva is not binding precedent. See Ballard v. Burton, 444 F.3d 391, 401 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4 (“An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority.”)). The second is that Tarazon-Silva lacked any substantial factual analysis. In a one page opinion, the panel merely concluded that the search did not occur on protected cur-tilage. Tarazon-Silva provides scant analytical guidance and is, in my view, improperly relied upon by the majority.
The majority implies that the absence of a similar case prohibiting this type of search pr e-Jardines protects the officer’s actions. Essentially, their holding would suggest that a search is reasonable so long as no court has explicitly found a search under identical circumstances to be unreasonable. Jardines did not announce a new rule and thus this type of warrantless search was not “close enough to the line of validity” even pre-jardines. See United States v. Burston, 806 F.3d 1123, 1129 (8th Cir. 2015) (finding that Davis does not apply because no cases “serve as binding precedent to permit the drug-detection dog sniff in this factual context”).
III.
The Fourth Amendment provides that the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” “The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.’ ” California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (quoting Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). “Katz posits a two-part inquiry: first, has the individual manifested a subjective expectation' of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?” Id. (citing Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)). The Supreme Court has long recognized that “when it comes to the Fourth Amendment, the home is first among equals.” Jardines, 133 S.Ct. at 1414. “At the Amendment’s ‘very core’ stands ‘the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.’ ” Id. (quoting Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)).
The Supreme Court specifically addressed the interplay between the Fourth Amendment and the good-faith exception in Leon, noting that it was not “persuaded that application of a good-faith exception to searches conducted pursuant to warrants will preclude review of the constitutionality of the search or seizure, deny needed guidance from the courts, or freeze Fourth Amendment law in its present state.” Leon, 468 U.S. at 924, 104 S.Ct. 3405. The Supreme Court elaborated:
The good-faith exception for searches conducted pursuant to warrants is not intended to signal our unwillingness strictly to enforce the requirements of the Fourth Amendment, and we do not believe that it will have this effect. ... There is no need for courts to adopt the *333 inflexible practice of always deciding whether the officers’ conduct manifested objective good faith before turning to the question whether the Fourth Amendment has been violated. Defendants seeking suppression of the fruits of allegedly unconstitutional searches or seizures undoubtedly raise live controversies which Art. Ill empowers federal courts to adjudicate. ... If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue.

Id.

The Supreme Court stated that it regards “the area ‘immediately surrounding and associated with the home’ — what [its] cases call the curtilage — as ‘part of the home itself for Fourth Amendment purposes.’” Jardines, 133 S.Ct. at 1414-15 (quoting Oliver v. United States, 466 U.S. 170, 176, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). “That principle has ancient and durable roots.” Id. “Just as the distinction between the home and the open fields is ‘as old as the common law,’ [Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)], so too is the identity of home and what Blackstone called the ‘cur-tilage or homestall’ for the ‘house protects and privileges all its branches and appur-tenants.’” Id. (quoting 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769)). In Jardines, the Supreme Court recognized that the front porch of a home “is the classic exemplar of an area adjacent to the home and ‘to which the activity of home life extends.’ ” 133 S.Ct. at 1415. “The protection afforded the curti-lage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened.” Ciraolo, 476 U.S. at 212-13, 106 S.Ct. 1809.
The Fourth Amendment has long protected against unwarrantéd searches of a person’s home and its curtilage. In 1961, the Supreme Court stated that “[t]he Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.” Silverman v. United States, 365 U.S. 505, 511-12, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) (citing Entick v. Carrington, 19 Howell’s State Trials 1029, 1066; Boyd v. United States, 116 U.S. 616, 626-630, 6 S.Ct. 524, 29 L.Ed. 746 (1886)). In 1980, the Supreme Court specifically stated that the “Fourth Amendment draws ‘a firm line at the entrance to the house.’ ” Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
In Kyllo, the Supreme Court noted that where “the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a ‘search’ and is presumptively unreasonable without a warrant.” Kyllo v. United States, 533 U.S. 27, 40, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); see also United States v. Beene, 818 F.3d 157, 165-75 (5th Cir. 2016) (Graves, J., dissenting). The device utilized in this case was a drug-detection dog. “[D]rug-detection dogs are highly trained tools of law enforcement, geared to respond in distinctive ways to specific scents so as to convey clear and reliable information to their human partners.” Jardines, 133 S.Ct. at 1418 (Kagan, J., concurring) (citing Florida v. Harris, — U.S. -, 133 S.Ct. 1050, *334 1053-1054, 1056-1057, 185 L.Ed.2d 61 (2013)). Justice Kagan’s concurrence noted that drug-detection dogs “are to the poodle down the street as high-powered binoculars are to a piece of plain glass. Like the binoculars, a drug-detection dog is a specialized device for discovering objects not in plain view (or plain smell).” Id. While her concurrence gives a particularly relevant example, the concept is based on 2001’s Kyllo — decided seven years before the present search.[3]
Here, the search was conducted at the door of a rear-entry garage. Courts utilize four factors to determine if an area is within the curtilage of the home: (1) “the proximity of the area claimed to be curti-lage to the home;” (2) “whether the area is included within an enclosure surrounding the home;” (3) “the nature of the uses to which the area is put;” and (4) “the steps taken by the resident to protect the area from observation by people passing by.” United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). Holley’s garages were attached and therefore enclosed within the home. The garage served as an entrance to the home. See generally Burston, 806 F.3d at 1127 (finding an area six to ten inches from defendant’s, window to be part of the curtilage). A garage is often used for home purposes- — -it can serve as a workshop, a family room, an exercise room, or a place for storage of home goods.
Still, the Government contends that the driveway upon which the officer and the drug-detection dog stood was open to the public. The driveway, however, was removed from the street and accessible only by an alleyway. The Government implies that it was open to the public. I cannot agree. The implication is that the Fourth Amendment right in these circumstances only arises upon the erecting of a fence, the closing of a gate, or the posting of a sentry. Holley had his garage door closed — that should be enough, in my view, to keep away uninvited guests at 5:00 a.m. Furthermore, I do not suggest, as the majority states, that a “dog sniff of a garage door [i]s categorically unconstitutional.” This specific search is, in my view, unconstitutional.
In Jardines, the Supreme Court described the lack of invitation for an officer to approach a home with a drug-detection dog and how the situation violates social norms. “[A] police officer not armed with a warrant may approach a home and knock, precisely because that is ‘no more than any private citizen might do.’” Jardines, 133 S.Ct. at 1416 (quoting Kentucky v. King, 563 U.S. 452, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)). “But introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do that.” Id. The Supreme Court noted that this is the type of situation that would inspire someone to call the police on the trespasser. In this case the officer came onto Holley’s property at 5:00 a.m. — thus violating social norms and distinguishing this situation from when a Girl Scout or a trick-or-treater approaches a person’s door from an open walkway.[4] This is common *335 sense and not a new rule of law.[5] Accordingly, in my view, the initial dog sniff constituted an unreasonable and illegal unwarranted search.
IV.
Having described the illegality of the initial dog sniff, I turn to its effect on the later obtained warrant. The affidavit to support the search warrant relied heavily on two “free-air sniff’ dog searches of Holley’s rear-entry garage at approximately 5:00 a.m. on two different days.[6] On both occasions, the dog allegedly “alerted to the presence of the odor of an illegal drug while sniffing the garage door.” Based largely upon the canine alerts, an officer sought and received a search warrant for the Gray Wolf Trail house. Officers first searched Gray Wolf and then Winterwood, which was discovered as a result of the records found during the execution of the Gray Wolf search warrant. Before obtaining a warrant to search Winterwood, an officer again conducted a warrantless dog sniff of the property.
The later issued warrant, however, does not sanitize an otherwise illegal search. As noted by the Eighth Circuit, “[i]f clearly illegal police behavior can be sanitized by the issuance of a search warrant, then there will be no deterrence, and the protective aims of the exclusionary rule will be severely impaired if not eliminated.” United States v. O’Neal, 17 F.3d 239, 243 n.6 (8th Cir. 1994); see also United States v. McGough, 412 F.3d 1232, 1240 (11th Cir. 2005) (“In this case, it was not an ‘objectively reasonable law enforcement activity’ but rather the officers’ unlawful entry into [defendant’s] apartment that led to [the officer’s] request for a search warrant. In such a situation, ‘the search warrant affidavit was tainted with evidence obtained as a result of a prior, warrantless, presumptively unlawful entry into a personal *336 dwelling.’ ”); United States v. Wanless, 882 F.2d 1459, 1466 (9th Cir. 1989) (noting that “good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search”); United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir. 1996) (declining to apply the good-faith exception when the “issuance of the warrant was itself premised on material .obtained in a prior search that today’s holding makes clear was illegal”); United States v. Mowatt, 513 F.3d 395, 405 (4th Cir. 2008) abrogated on other grounds by Kentucky v. King, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) (“The Leon exception does not apply here because Leon only prohibits penalizing officers for their good-faith reliance on magistrates’ probable cause determinations. Here, the exclusionary rule operates to penalize the officers for their violation of [defendant’s] rights that preceded the magistrate’s involvement.”); United States v. Vasey, 834 F.2d 782, 789 (9th Cir. 1987) (holding that Leon exception did not apply when warrant was based on information obtained in illegal warrantless search because “[t]he constitutional error was made by the officer ..., not by the magistrate”); United States v. Davis, 430 F.3d 345, 358 n.4 (6th Cir. 2005) (“[W]e agree with the numerous other circuits that have held that the Leon good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure.”).
Because the later issued warrant was based on an illegal search, the evidence obtained through the use of the warrants should be excluded as fruit of the poisonous tree. See Nix v. Williams, 467 U.S. 431, 441, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)); see also Segura v. United States, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (“[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), but also evidence later discovered and found to be derivative of an illegality or ‘fruit of the poisonous tree.’ ”) (citation omitted). The good-faith exception limits exclusion where “the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.” Leon, 468 U.S. at 922, 104 S.Ct. 3405. This is not such a case. In this situation, excluding the tainted evidence. would advance the interest of deterring unlawful police conduct in the form of the invasion of a person’s home space with a drug-detection dog in the early morning hours. Where the benefits produced by suppressing the evidence are not merely marginal or nonexistent and do justify the costs of exclusion, the good-faith exception does not apply. See Massi, 761 F.3d at 537 (Graves, J., dissenting) (citing Leon, 468 U.S. at 922, 104 S.Ct. 3405).
V.
As a direct result of a constitutional violation, authorities obtained a search warrant. Thus, the evidence obtained as a result of that search is tainted. Exclusion of that tainted evidence would certainly advance the interest of deterring unlawful police conduct. Because the warrant was based on an illegal and unreasonable search, I cannot conclude that the good-faith exception applies in this instance. I do not agree that “the two dog sniffs were ‘close enough to the line of validity’ that an objectively reasonable officer would not have realized that the Gray Wolf Trail and Winterwood Lane warrants were tainted.” The officer did not act on binding precedent. Instead, he intruded into a constitu *337 tionally protected area with a drug-detection dog at five o’clock in the morning. The majority’s holding permits officers to utilize drug-detection dogs on protected property without a warrant and then to utilize any evidence obtained to subsequently acquire a warrant. Because I conclude that Holley’s motions to suppress should be granted, I respectfully dissent.

. The dog sniffs took place on March 25, 2008, and April 7, 2008 — both at "approximately” 5:00 a.m. The sun rose at 7:22 a.m. on the 25th and 7:05 a.m. on the 7th. See Sunrise & Sunset for Dallas, TX, The Old Farmer's Almanac, 2016, http://www. almanac.com/astronomy/rise/TX/D allas/2008-04-07.

. The majority cites a few non-binding cases, some of which are unpublished. See, e.g., United States v. Vasquez, 909 F.2d 235, 238 (7th Cir. 1990); United States v. Hogan, 122 F.Supp.2d 358, 367-69 (E.D.N.Y. 2000); Stauffer v. State, No. 14-03-00193-CR, 2004 WL 253520, at *2-3 (Tex. Ct. App. Feb. 12, 2004) (unpublished); Smith v. State, No. 01-02-00503-CR, 2004 WL 213395, at *3-4 (Tex. Ct. App. Feb. 5, 2004) (unpublished).

. The majority cites Illinois v. Caballes for the proposition that "a dog is not the type of 'sense-enhancing' tool discussed in Kyllo." 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). The Supreme Court did not state this. Instead, the Supreme Court drew a distinction between the expectation of privacy in one's home and that of the trunk of one’s vehicle during a “concededly lawful traffic stop.” Id. Kyllo evidenced the Supreme Court's "intention to draw both a 'firm' and a 'bright' line at 'the entrance to the house.’ " Jardines, 133 S.Ct. at 1419 (Kagan, J., concurring).

. The majority concludes that I "ignore cases holding that a driveway is not part of the *335 home’s curtilage,” and then cites United States v. Beene, 818 F.3d 157, 162-63 (5th Cir. 2016). Beene, however, did not announce a broad rule that a driveway is not part of a home’s curtilage. Instead, the majority conducted a factual analysis under the Dunn factors and stated that “the driveway's proximity to the residence weighted] in favor of a finding that it was part of the curtilage of the home.” Id. at 162. Here, the garage is essentially part of the home because it is directly attached and serves as the entrance to the home — much like the front porch in Jardines.

. The majority does not address the timing of the search, but it serves to add to the common sense conclusion that the search violated social norms. The Illinois Supreme Court recently considered a search happening in the early morning hours. See generally People v. Burns, 401 Ill.Dec. 468, 50 N.E.3d 610, 630 (2016) (“We hold that the warrantless use of a drug-detection dog at 3:20 a.m. at defendant's apartment door, located within a locked apartment building, violated defendant’s rights under the fourth amendment to the United States Constitution.”). Further, Justice Alito utilized the timing of the search in /fir-dines as support for its reasonableness in his dissent. See Jardines, 133 S.Ct. at 1423 (Alito, J., dissenting) (“He adhered to the customary path; he did not approach in the middle of the night; and he remained at the front door for only a very short period (less than a minute or two).”) Justice Alito went on to cite an Idaho Court of Appeals case where the court held that " '[fjurtive intrusion late at night or in the predawn hours is not conduct that is expected from ordinary visitors. Indeed, if observed by a resident of the premises, it could be a cause for great alarm.' " Id. (quoting State v. Cada, 129 Idaho 224, 923 P.2d 469, 478 (Ct. App. 1996)).

. A confidential informant told an officer that Holley was a large volume marijuana dealer. The informant stated that Holley lived in a house near Preston Road and Frankford Road and that he drove a white Lincoln Navigator. A search revealed that Holley owned a Navigator and that he lived at 6203 Gray Wolf Trail in Dallas — approximately one mile from the intersection of Preston and Frankford. Still, the affidavits would have been paltry, at best, without the dog sniffs.